Benjamin N. Gluck - State Bar No. 203997
    bgluck@birdmarella.com
Nicole R. Van Dyk - State Bar No. 261646
    nvandyk@birdmarella.com
Naomi S. Solomon - State Bar No. 321357
    nsolomon@birdmarella.com
Ashley D. Bowman - State Bar No. 286099
    abowman@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Movant Dr. Linda R.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| SEARCH AND SEIZURE OF BOX NO. 8309 AT U.S. PRIVATE VAULTS<br><br>Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA<br><br>Defendant. | CASE NO. 2:21-cv-03554<br><br>**COMPLAINT (MOTION) FOR RELIEF UNDER FED. R. CRIM. PRO. 41; REQUESTING INVENTORIES AND RECORDS REGARDING MISSING PROPERTY** |

3715510.2

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD**:

**PLEASE TAKE NOTICE** that as soon as the matter may be calendared and heard in the courtroom of the Honorable R. Gary Klausner, Movant Dr. Linda R. ("Movant") will and hereby does move the Court for an order that she be provided with all inventory material and records (including video) related to the search, seizure, and chain of custody of the contents of Box 8309 at U.S. Private Vaults, located at 9182 West Olympic Blvd., Beverly Hills, CA 90212. Movant is entitled to this material pursuant to Federal Rule of Criminal Procedure 41 and the Fourth and Fifth Amendments of the United States Constitution.

This Motion is based on this Notice, the accompanying Memorandum of Points and Authorities, the concurrently filed Declaration of Nicole R. Van Dyk, all other pleadings and papers on file in this action, and such other documents, oral evidence, or argument as may be presented before or at the time of the hearing on this Motion.

Because Dr. R. is not the subject of any criminal prosecution, any request made under Fed. R. Crim. Proc. 41 is treated as a civil equitable proceeding. *Nottoli v. United States*, No. 1: 13-mc-0049-BAM (E.D. Cal. Sep. 26, 2013) (citing *United States v. Ritchie*, 342 F.3d 903, 906 (9th Cir. 2003)).

DATED: April 26, 2021

Benjamin N. Gluck
Nicole R. Van Dyk
Naomi S. Solomon
Ashley D. Bowman
Bird, Marella, Boxer, Wolpert, Nessim,
Drooks, Lincenberg & Rhow, P.C.

By: _____
Benjamin N. Gluck
Attorneys for Movant Dr. Linda R.

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................ 6

II. BACKGROUND .................................................................................................. 7

    A. The Search And Seizure Of Movant's Property At USPV ............................ 7

    B. The Government Returns Some Of Movant's Property But Some Items Are Missing And Unaccounted For ....................................................... 8

III. ARGUMENT ...................................................................................................... 11

    A. Rule 41 And The Court's Inherent Power Provide Dr. R. With A Vehicle To Obtain Relief ............................................................................. 11

    B. Dr. R. Is Entitled To A Copy Of Inventory Material Related To Her Missing Property And The Court Should Order It Produced ....................... 13

        1. Dr. R is "aggrieved by the deprivation of her property" due to the Government's search and seizure and its failure to return or account for all of it and the Court should exercise its Rule 41 jurisdiction ............................................................................................ 13

        2. Dr. R. is entitled to a meaningful inventory of the Government's seizure under Federal Rule Of Criminal Procedure 41(f)(1)(C) and under the Fourth Amendment ................ 14

        3. The Government told the Magistrate Judge that it would create proper inventories, but the inventories it has provided so far are essentially useless ............................................................................. 15

        4. Relief requested – The Court should order the Government to produce all material that will allow Dr. R. to substantiate her claim that the Government seized gold coins from her and failed to return them ........................................................................... 18

IV. CONCLUSION .................................................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*United States v. Cardona*,
    897 F. Supp. 802 (S.D.N.Y. 1995) .................................................................................. 11

*Does I thru XXIII v. Advanced Textile Corp.*,
    214 F.3d 1058, (9th Cir. 2000) ......................................................................................... 5

*Hunsucker v. Phinney*,
    497 F.2d 29 (5th Cir. 1974) ............................................................................................ 10

*United States v. Ibrahim*,
    522 F.3d 1003 (9th Cir. 2008) ........................................................................................ 12

*United States v. Kama*,
    394 F.3d 1236 (9th Cir. 2005) ........................................................................................ 12

*Lavan v. City of Los Angeles*,
    693 F.3d 1022 (9th Cir. 2012) ........................................................................................ 12

*United States v. Martinson*,
    809 F.2d 1364 (9th Cir. 1987) ........................................................................................ 10

*Otonye v. United States*,
    903 F. Supp. 357 (E.D.N.Y. 1995) ................................................................................. 11

*Ramsden v. United States*,
    2 F.3d 322 (9th Cir. 1993) .............................................................................................. 12

*United States v. Rodriguez*,
    No. EP-08-1865-PRM, 2011 WL 5854369 (W.D. Tex. Feb. 18, 2011) ........................ 10

*In re Searches & Seizures*,
    No. 08-SW-0361 DAD, 2008 WL 5411772 (E.D. Cal. Dec. 19, 2008) ........................ 14

*Societe d'Equipments Internationaux Nigeria, Ltd. v. Dolarian Cap., Inc.*,
    No. 115CV01553DADSKO, 2016 WL 4191887 (E.D. Cal. Aug. 8, 2016) ................. 14

**Other Authorities**

41 C.F.R. § 128-50.101 ........................................................................................................ 11

Fourth Amendment ......................................................................................... 12, 13, 14, 17

Federal Rule Of Criminal Procedure 41(f)(1)(C) ................................................................. 13

Federal Rule of Criminal Procedure 41(g) ..................................................................... 10, 12

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Dr. Linda R. is 80 years old.[1] About a month ago, the Government seized her retirement savings from her box at U.S Private Vaults. After counsel demanded its return, Government agents met with counsel and Dr. R. and returned **some** of it. **But the Government failed to account for or return forty 1 oz. gold coins, worth over $75,000**.

The agents told Dr. R. that they did not know anything about the missing coins. When counsel asked the agents for a copy of their inventory of Dr. R.'s box, the agents provided a property receipt based on their inventory for Dr. R.'s box that describes the property as only "Misc. Coins," with no indication of types or quantities.[2]

Counsel immediately contacted the lead AUSA in this matter and advised him of the missing items. Counsel also asked the AUSA for a copy of the proper inventory of

---

[1] "[A] party may preserve his or her anonymity in judicial proceedings in special circumstances when the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity." *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000). The Ninth Circuit has recognized that such circumstances include situations where, as here, identification would create a risk of physical or mental harm and "anonymity is necessary to preserve privacy in a matter of sensitive and highly personal nature." *Id.* at 1068 (internal quotation marks, citations omitted). This pleading uses the first initial of Movant's last name in order to protect her security. She is elderly and lives alone and the discussions about her savings and where she keeps her assets could put her safety at risk. There is no prejudice to the Government from allowing Dr. R. to proceed without publicizing her full name because Dr. R.'s true name and identity is known to the Government, both because counsel disclosed it when first demanding return of Dr. R.'s property and because Government agents met with Dr. R. (in counsel's presence) to return her property, upon which Dr. R. again provided her full name to the Government. Moreover, there is no public interest in knowing Dr. R.'s full name because any public interest in providing inventories to persons from whom the Government seized property can be satisfied without public disclosure of her identity.

[2] A copy of the receipt, which the agents said reflects the entire inventory, is attached as Exhibit B to the Declaration of Nicole R. Van Dyk and excerpted below.

3715510.2

6

COMPLAINT (MOTION) FOR RELIEF UNDER FED. R. CRIM. PRO. 41

Box 8309, which the AUSA had represented to the Magistrate Judge and to the Court in this matter was required pursuant to FBI written policies in order to protect the agency from claims of theft.[3]  The Government has not responded to any of these communications.  The Government's seizure of Dr. R.'s retirement savings has already caused Dr. R. more than enough stress and anxiety.  The missing coins and lack of any kind of inventory, indeed the lack of any response at all from the Government, only adds to her injury.

For now, Dr. R. seeks an order that the Government provide her with all records reflecting how Box 8309 and its contents were searched, seized, and handled, including all inventories, all videos or other records of these processes, all chain-of-custody documentation, and all written protocols that were purportedly followed.  Dr. R. submits that this material will prove that the Government took over $70,000 from her – without probable cause – and has yet to give it back.  With these records in hand, Dr. R. will at least be able to know that she will ultimately be able to obtain relief, either through the return of the missing coins or through compensation.

## II.

## BACKGROUND

**A.    The Search And Seizure Of Movant's Property At USPV**

Dr. R. is a semi-retired octogenarian who lives in the Los Angeles area. (Declaration of Nicole R. Van Dyk ("Van Dyk Decl.") ¶ 2.)  For over two decades, she has invested her retirement savings in a collection of gold and silver coins she stored in recent years in Box 8309 at the U.S. Private Vaults ("USPV") facility at 9182 West Olympic Blvd. in Beverly Hills, along with cash from a property sale nearly three decades ago.  (*Id.*)  Dr. R. utilized her box at USPV to protect her savings from theft and what she perceived to be instability in the financial and banking systems.  (*Id.*)  As of March 2021, Dr. R.'s box

---

[3]   The Government has not claimed that inventories were necessary to protect box holders from losing their possessions, only to protect the government against fraudulent claims.

contained a significant portion of her retirement assets, as she lost her primary source of income from a rental property due to the COVID-19 crisis. (*Id.*)

As this court is now well aware, beginning on March 22, 2021, the Government executed search and seizure warrants at USPV.[4] Among other things, Government agents seized each of the hundreds of safe deposit boxes housed at the facility, along with the contents of each box belonging to the individual box holders who rented them. Dr. R.'s box, No. 8309, and its contents were among those seized. (*Id.* at ¶ 3.)

**B.    The Government Returns Some Of Movant's Property But Some Items Are Missing And Unaccounted For**

Immediately after the seizure of Dr. R.'s property, Dr. R. contacted the Government, identified herself as the owner of Box 8309, and provided a detailed description of the contents of that box. (*Id.* at ¶ 4.) In return, she received a form email saying she would be contacted within two months. (*Id.*) Because the stress from the seizure and the Government's non-response was exacerbating Dr. R.'s health issues, on April 16, 2021, counsel sent a letter to AUSA Andrew Brown requesting further information regarding how Dr. R. could receive her property. (*Id.* at ¶ 5, Ex. A.) On April 19, 2021, the Government informed Dr. R. that it would return her property on April 21, 2021.

On the designated day, Dr. R. and her counsel met with two agents from the FBI to obtain the gold and silver coins the Government seized from her box at USPV.[5] (Van Dyk Decl. ¶ 6.) When the agents arrived with Dr. R.'s property, they verified her ownership of Box 8309 by testing her UPSV key to ensure that it opened the lock on the door to Box

---

[4]   Dr. R. requests that the Court take judicial notice of the filings before this Court arising from the search of U.S. Private Vaults.

[5]   The Government has informed counsel that the cash seized from Dr. R's box was deposited into the Government's forfeiture account and the cash equivalent would be wired back to Dr. R. at a future date. (Van Dyk Decl. ¶ 7.) Dr. R. has not yet received her cash. Nor has the Government informed her how much cash they seized or will return.

1  8309, which door had been detached from the rack of safe deposit boxes and which the
2  agents had brought with them to the meeting. (*Id.*) After Dr. R.'s key successfully opened
3  the locking mechanism in the door to Box 8309, the agents provided Dr. R. with a property
4  receipt for her box, which they represented reflected the information in the "inventory"

> FD-597 (Rev. 4-13-2015)  Page 1 of 1
>
> **UNITED STATES DEPARTMENT OF JUSTICE**
> **FEDERAL BUREAU OF INVESTIGATION**
> **Receipt for Property**
>
> Case ID: 272E-LA-[redacted]
> On (date): 04/21/2021
> item(s) listed below were:
> ☐ Collected/Seized
> ☐ Received From
> ☑ Returned To
> ☐ Released To
>
> (Name) Linda [redacted] R[redacted]
> (Street Address) [redacted]
> (City) [redacted]
>
> Description of Item(s):
> 1. Misc. coins
> 2. Misc. coins
> 3. Misc. coins
> 4. Misc. coins
> 5. Misc. coins
> 6. Misc. coins
> 7. Misc. coins
> 8. Misc. coins
> 9. Misc. documents
> 10. Misc. packaging materials
> 11. Misc. packaging materials
>
> ☆ claim of 2 20-coin tubes of 1oz $50 gold american eagle coins
> red tops
> 4/21/21 1:52 pm
>
> Received By: [redacted]   Received From: [signature]
> Printed Name/Title: [redacted]   Printed Name/Title: Cody Bescript / FBI

completed during the search and seizure at USPV:

1 (Van Dyk Decl. ¶ 8, Ex. B.) Notably, the receipt—and apparently the "inventory" from which it was allegedly precisely copied—contains neither the type nor the amount of coins seized.

In anticipation of meeting with the agents, and to ensure the return of all of the property that had been contained in her box, Dr. R. prepared a detailed list of each type of coin she believed she had in her box at the time it was seized, along with the amount of each type. (*Id.* ¶ 9.) She and her counsel used that list to count the coins returned by the agents, with their assistance, and discovered that at least forty 1 oz. Gold American Eagle coins, with an estimated value of about $75,000,[6] were missing. (*Id.*) At the conclusion of the review, the agents amended the property receipt to reflect Dr. R.'s claim for the missing coins. (*Id.* ¶ 10.) They also assured Dr. R. and counsel that the search, seizure, and inventory of her property were well documented by photographs and video, though they conceded that due to the sheer number of boxes at USPV, the agents conducting the process had to use general, rather than detailed, descriptions in the written inventories as the search went on. (*Id.*)

In an effort to reassure Dr. R. and to secure the swift return of her missing property, counsel sent letters to lead AUSA Andrew Brown on April 21 and 22 advising him of the missing property and requesting that the Government provide Dr. R with: (1) a copy of all inventories of her property, (2) copies of all photographs and videos documenting the search, seizure, or contents of her box, and (3) copies of any procedures or protocols used to seize and inventory her property. (*Id.* ¶ 11, Exs. C & D.) Counsel also requested that the Government respond to their request with urgency, as the apparent loss of a portion of her retirement savings was (and is) causing Dr. R. severe distress and exacerbating her poor health. (*Id.*) The Government has yet to acknowledge those requests.

---

[6] According to www.monex.com, the purchase price of a 1 oz. Gold American Eagle coin as of April 22, 2021, was $1907.30.

# III.

# ARGUMENT

**A. Rule 41 And The Court's Inherent Power Provide Dr. R. With A Vehicle To Obtain Relief**

Federal Rule of Criminal Procedure 41(g) provides:

> **Motion to Return Property.** A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

Dr. R. is "aggrieved . . . by the deprivation of property," namely the forty 1 oz. Gold American Eagle coins that the Government has not returned to her. Because her main concern is establishing that the Government took the coins and she is willing to wait (at least for now) to get them back, at this point she seeks only the records that will help her establish her claim. An order requiring the production of these records to Dr. R. is easily within the equitable powers granted to the Court by Rule 41 as well as the Court's inherent power.

Rule 41 is clear that "in a motion for return of property, as with any other equitable action, a court may fashion *any* appropriate relief that comports with traditional equitable principles" absent "clear Congressional command to exclude certain forms of relief." *United States v. Rodriguez*, No. EP-08-1865-PRM, 2011 WL 5854369, at *3 (W.D. Tex. Feb. 18, 2011); *Hunsucker v. Phinney*, 497 F.2d 29, 34 (5th Cir. 1974) ("Rule 41 is a crystallization of the principle of equity jurisdiction. That equity jurisdiction persists as to situations not specifically covered by the Rule."); *see also United States v. Martinson*, 809 F.2d 1364, 1367 (9th Cir. 1987) (reversing denial of Rule 41(g) motion because "It is the historic purpose of equity secure complete justice. The courts will be alert to adjust their remedies so as to grant the necessary relief."). The guiding principle of Rule 41(g) is "reasonableness under all of the circumstances." Fed. R. Crim. P. 41(g) Advisory Comm. Notes (1989), 124 F.R.D. 397, 427-29.

In addition to the power granted by Rule 41, the Court has the inherent equitable power to consider motions for return of property. "This power stems from the court's disciplinary authority over attorneys appearing before it as officers of the court. This inherent power also extends to federal agents charged with 'observ[ing] 'standards for law enforcement' established by 'the federal Rules governing searches and seizures.'" *Otonye v. United States*, 903 F. Supp. 357, 360 (E.D.N.Y. 1995) (citations omitted).

Where, as here, the Government concedes that it must return a claimant's property, the Government bears the initial burden of proving that it "observed standards . . . governing searches and seizures," and handled the property consistent with proper protocols:

> Since, as previously discussed, plaintiff's constitutional rights under the Fourth Amendment are implicated, it makes sense that the government should initially bear the burden of proving that it dealt with plaintiff's property in accordance with regulations prescribed in 41 C.F.R. § 128.50–101[7] or other acceptable standards. Once this showing is made, the burden should then shift to the claimant to demonstrate the existence of the claimed property.

*Id.* at 363 n.8; *see also United States v. Cardona*, 897 F. Supp. 802, 804 (S.D.N.Y. 1995) ("Clearly, the Government, in order to defeat a motion for the return of seized property,

---

[7] This regulation applies to Justice Department agencies and provides:

Each bureau shall be responsible for establishing and maintaining inventory records of its seized personal property to ensure that:

(a) The date the property was seized is recorded;

(b) All of the property associated with a case is recorded together under the case name and number;

(c) The location of storage of the property is recorded;

(d) A well-documented chain of custody is kept; and

(e) All information in the inventory records is accurate and current.

41 C.F.R. § 128-50.101

must provide some evidentiary proof accounting for the property seized."). Thus, the Government should be prepared to provide this information.

Where, as here, no criminal proceeding is pending against a Rule 41(g) movant, the district court considers four factors in deciding whether to exercise jurisdiction over the movant's request for relief: whether "(1) the Government displayed a callous disregard for the constitutional rights of the movant; (2) the movant has an individual interest in and need for the property he wants returned; (3) the movant would be irreparably injured by denying return of the property; and (4) the movant has an adequate remedy at law for the redress of his grievance." *United States v. Kama*, 394 F.3d 1236, 1238 (9th Cir. 2005) (quoting *Ramsden v. United States*, 2 F.3d 322, 324-325 (9th Cir. 1993)) (internal citation marks omitted). Not all factors must weigh in the movant's favor for the district court to exercise jurisdiction; rather, a court engages in a balancing test. *Ramsden*, 2 F.3d at 326 (exercising jurisdiction over Rule 41(g) motion despite finding that the plaintiff had not shown irreparable injury).

Because Dr. R. has not been charged in any criminal proceeding – indeed the Government has already returned some of her property and concedes it had no probable cause to search or seize it – her Rule 41 motion is treated as a civil equitable proceeding. *See*, *e.g., United States v. Ibrahim,* 522 F.3d 1003, 1008 (9th Cir. 2008).

**B.     Dr. R. Is Entitled To A Copy Of Inventory Material Related To Her Missing Property And The Court Should Order It Produced**

   **1.     Dr. R is "aggrieved by the deprivation of her property" due to the Government's search and seizure and its failure to return or account for all of it and the Court should exercise its Rule 41 jurisdiction**

"The Fourth Amendment protects two types of expectations, one involving 'searches,' the other 'seizures.' A 'search' occurs when the government intrudes upon an expectation of privacy that society is prepared to consider reasonable. A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *Lavan v. City of Los Angeles*, 693 F.3d 1022, 1027

1  (9th Cir. 2012) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)). There is no
2  question both occurred here. All of Dr. R.'s possessions in Box 8309 were searched and
3  were seized—but at issue here are solely the missing gold coins.
4  　　　The Government's failure to account for 40 gold coins and its provision of patently
5  deficient receipts identifying unknown quantities of unknown "Misc. Coins" satisfies all
6  four elements of Rule 41's jurisdictional query: (1) failing to create or provide any useful
7  inventory and losing track of Dr. R.'s retirement funds is easily callous; (2) Dr. R. has an
8  individual interest and need for her retirement funds; (3) she would be irreparably injured
9  by the loss of her possessions; and (4) she has no adequate remedy at law for the redress of
10 this grievance. Thus, Dr. R. submits that the Court should exercise its jurisdiction to help
11 her.
12 　　　**2.　　Dr. R. is entitled to a meaningful inventory of the Government's seizure
13 　　　　　　under Federal Rule Of Criminal Procedure 41(f)(1)(C) and under the
14 　　　　　　Fourth Amendment**
15 　　　Rule 41(f)(1)(C) requires that "the officer executing the warrant must give a copy of
16 the warrant and a receipt for the property taken to the person *from whom*, or from whose
17 premises, *the property was taken* or leave a copy of the warrant *and receipt* at the place
18 where the officer took the property." (Emphasis added). Rule 41(f)(1)(D) provides that
19 the magistrate judge designated on the warrant "must, on request, give a copy of the
20 inventory *to the person from whom*, *or from whose premises*, *the property was taken* and to
21 the applicant for the warrant." (Emphasis added). As set forth above, Dr. R. is a person
22 from whom property was seized during the execution of the USPV warrant and the
23 property was taken from her premises, *i.e.*, the interior of Box 8309. Thus, Dr. R.'s
24 request for a meaningful inventory and inventory records is consistent with her express
25 rights under Rule 41.
26 　　　In addition to Rule 41, courts of this Circuit have universally recognized that an
27 individual whose property is seized by the government also has a private "right of access
28 to search warrant materials, including the supporting affidavit, grounded in the Fourth

Amendment." *In re Searches & Seizures*, No. 08-SW-0361 DAD, 2008 WL 5411772, at *3 (E.D. Cal. Dec. 19, 2008) (collecting cases); *see also Societe d'Equipments Internationaux Nigeria, Ltd. v. Dolarian Cap., Inc.*, No. 115CV01553DADSKO, 2016 WL 4191887, at *1 (E.D. Cal. Aug. 8, 2016) (recognizing "a private right of access under the Fourth Amendment to the affidavit in support of the search warrant during the pre-indictment stage, which vests in the individual or entity whose property was seized"). Accordingly, Dr. R.'s Fourth Amendment right of access also entitles her to copies of the warrant materials.

### 3. The Government told the Magistrate Judge that it would create proper inventories, but the inventories it has provided so far are essentially useless

The affidavit that the Government relied on to obtain the USPV search and seizure warrants assured the Magistrate Judge that "Agents will follow their written inventory policies to protect their agencies from claims of theft or damage to the contents of the boxes[.]" (Van Dyk Decl. ¶ 12, Ex. E.) The warrant itself refers to this provision when it says: "In seizing the nests of safety deposit boxes, agents shall follow their written inventory policies to protect their agencies and the contents of the boxes." (*Id.* ¶ 13, Ex. F.) But the inventories the Government has provided do nothing of the sort.

First, the Government has unsealed the "inventory" it filed with the search warrant return. But that inventory says nothing at all about the contents or seizure of *any* contents of *any* boxes, much less Box 8309. Instead, it says only that only that the Government seized a "Nest of Safe Deposit boxes, including shelving, boxes, hardware and bond tin":

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

> Case 2:21-mj-01307-DUTY *SEALED* Document 5 Filed 04/09/21 Page 2 of 3 Page ID #:235
>
> Case 2:21-mj-01307-DUTY *SEALED* Document 1-1 *SEALED* Filed 03/17/21 Page 2 of 3 Page ID #:111
>
> **RETURN**
>
> | DATE WARRANT RECEIVED | DATE AND TIME WARRANT EXECUTED | COPY OF WARRANT AND RECEIPT FOR ITEMS LEFT WITH |
> |---|---|---|
> | 3/17/2021 | 3/22/2021 – 7:59 AM | AT THE BUSINESS |
>
> INVENTORY MADE IN THE PRESENCE OF: SA Lynne K. Zellhart
>
> INVENTORY OF PROPERTY SEIZED PURSUANT TO THE WARRANT
>
> 1. Asus Zen pad Model P023
> 2. Dell Inspiration
> 3. Dell Vostro P/N 40.3GA01.021
> 4. USPV Database Exports from Cloud
> 5. Money Counter – Cummins/Allison w/ power cord
> 6. Money Counter – Bill Counter + power cord
> 7. Iris ID icam 70C (1)
> 8. Iris ID icam 700 (2)
> 9. Schlange Biometric Hand Key CR (1)
> 10. Schlange Biometric Hand Key CR (2)
> 11. **Nest of Safe Deposit boxes, including shelving, boxes, hardware and bond tins.**
> 12. Box of Keys
> 13. Loose Keys
>
> **CERTIFICATION**
>
> I declare under penalty of perjury that I am an officer who executed this warrant and that this inventory is correct and was returned along with the original warrant to the designated judge through a filing with the Clerk's Office.
>
> Date: 4/9/2021   [signature]
> Executing officer's signature
>
> SA Lynne K. Zellhart
> Printed name and title

(Van Dyk Decl., Ex. F.)

From this "inventory," one has no hint that the Government spent an entire week forcing open each of the "safe deposit boxes," inventorying their contents, and carrying away the possessions of hundreds of people, including Dr. R.'s retirement funds. Surely, this "inventory" does nothing to protect the Government against a claim of theft.

As to the receipt given to Dr. R. on April 21 with the return of *some* of her property, that too is essentially useless. "Misc. Coins" could mean anything from two pennies,

worth $0.02, to any number of 1933 Double Eagles, each worth over $7 million.[8] Dr. R. does not claim to have had any Double Eagles in Box 8309. But she did have forty 1 oz. Gold American Eagle coins that have yet to be returned and there is no way to know from the receipt the Government gave her what happened to them. Moreover, because the agents who returned Dr. R's property said that they copied this receipt word-for-word from the inventory of her box conducted at USPV, it is unknown to Dr. R. whether the Government *even has* a properly detailed inventory.

Indeed, it appears that the receipt provided to Dr. R. may not be unique in its deficiency. Undersigned counsel also represents another elderly box holder and corresponded with the Government about that box holder's possessions too. After counsel threatened to file a motion, the Government indicated that it would return that second box holder's possessions, and it did so on April 19, 2021. This second box holder had gold and silver coins (and some papers) in his box, but, similar to Dr. R.'s case, the property receipt that the Government provided listed only "various miscellaneous documents, and various silver and gold colored coins"[9] (Van Dyk Decl. ¶ 14.) Again, this description is effectively of no use at all.

The Government told the Magistrate Judge that it would create a proper inventories. in order to protect the government agencies. Indeed, the Government told counsel that the purpose of the Government's search of the contents of the safety deposit boxes was to create these inventories to protect the Government from claims of theft or damage. But the inventories the Government has so far provided are so devoid of detail that they are entirely useless for this ostensible purpose. It is hard to believe that the Government does not have more thorough inventory records, ones that could actually protect the Government (and the box holders) by properly listing the items the Government took.

---

[8] https://en.wikipedia.org/wiki/List_of_most_expensive_coins

[9] It should be noted that at this point this second client is unsure whether he received everything that had been in his box.

Certainly the video and photographs should assist in this regard.

**4. Relief requested – The Court should order the Government to produce all material that will allow Dr. R. to substantiate her claim that the Government seized gold coins from her and failed to return them**

Pursuant to the Court's equitable power under Rule 41 as well as its inherent equitable power, Dr. R. requests that the Court order the Government to produce to Dr. R. all documents in the Government's possession reflecting the contents of Box 8309, including, without limitation:

(a) All inventories or property receipts for the contents of Box 8309;

(b) All video or photographs reflecting the contents of Box 8309 and their handling;

(c) All chain-of-custody or similar documentation related to the contents of Box 8309;

(d) All written inventory policies the Government referenced in the affidavits and search warrants for U.S. Private Vaults and/or purported to follow in the handling of Box 8309 and its contents.

## IV.
## CONCLUSION

The Government concedes that must return Dr. R.'s retirement savings. But it has yet to account for approximately $75,000 of that savings and it has not provided any proper receipt or inventory—items to which Dr. R. is entitled under Rule 41 and under the Fourth Amendment. At this point, Dr. R. merely seeks assurance that the Government admits it took the missing coins. For now, she is not seeking damages for their loss or

even an order for their return; therefore, the equities strongly favor an order requiring the Government to give Dr. R. what she asks for. Dr. R. respectfully requests that the Court grant her relief and order the Government to provide the inventory material for Box 8309.

DATED: April 26, 2021

Respectfully Submitted,

Benjamin N. Gluck
Nicole R. Van Dyk
Naomi S. Solomon
Ashley D. Bowman
Bird, Marella, Boxer, Wolpert, Nessim,
Drooks, Lincenberg & Rhow, P.C.

By: _____
Benjamin N. Gluck
Attorneys for Movant Dr. Linda R.