Benjamin N. Gluck - State Bar No. 203997
    bgluck@birdmarella.com
Nicole R. Van Dyk - State Bar No. 261646
    nvandyk@birdmarella.com
Naomi S. Solomon - State Bar No. 321357
    nsolomon@birdmarella.com
Ashley D. Bowman - State Bar No. 286099
    abowman@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile:  (310) 201-2110

Attorneys for Movant Dr. Linda R.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| SEARCH AND SEIZURE OF BOX NO. 8309 AT U.S. PRIVATE VAULTS<br><br>Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA<br><br>Defendant. | CASE NO. 2:21-cv-03554<br><br>**FIRST AMENDED COMPLAINT (MOTION) FOR RELIEF UNDER FED. R. CRIM. PRO. 41; REQUESTING MISSING PROPERTY, INVENTORIES, AND RECORDS**<br><br>Assigned to Hon. R. Gary Klausner |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD**:

**PLEASE TAKE NOTICE** that as soon as the matter may be calendared and heard in the courtroom of the Honorable R. Gary Klausner, Movant Dr. Linda R. will and hereby does move the Court for an order that (1) the Government return all as-yet unreturned property it seized from Box 8309 and (2) the Government provide Dr. R. with all as-yet unprovided inventory material and records related to the search, seizure, and chain-of-custody of the contents of Box 8309 at U.S. Private Vaults, located at 9182 West Olympic Blvd., Beverly Hills, CA 90212. Dr. R. is entitled to this material pursuant to Federal Rule of Criminal Procedure 41 and the Fourth and Fifth Amendments of the United States Constitution.

This Motion is based on this Notice, the accompanying Memorandum of Points and Authorities, the concurrently filed Declarations of Nicole R. Van Dyk and Benjamin N. Gluck, all other pleadings and papers on file in this action, and such other documents, oral evidence, or argument as may be presented before or at the time of the hearing on this Motion.

Because Dr. R. is not the subject of any criminal prosecution, any request made under Fed. R. Crim. Proc. 41 is treated as a civil equitable proceeding. *Nottoli v. United States*, No. 1: 13-mc-0049-BAM (E.D. Cal. Sep. 26, 2013) (citing *United States v. Ritchie*, 342 F.3d 903, 906 (9th Cir. 2003)).

DATED: May 17, 2021

Benjamin N. Gluck
Nicole R. Van Dyk
Naomi S. Solomon
Ashley D. Bowman
Bird, Marella, Boxer, Wolpert, Nessim,
Drooks, Lincenberg & Rhow, P.C.

By: _____

Benjamin N. Gluck
Attorneys for Movant Dr. Linda R.

2

# **<u>TABLE OF CONTENTS</u>**

**Page**

I. INTRODUCTION ................................................................................... 6

II. BACKGROUND ................................................................................... 8

    A.   The Government's Search And Seizure Of Dr. R.'s Property At USPV ........................................................................................... 8

    B.   The Government Returned Some Of Dr. R.'s Property But Items Remain Missing And Unaccounted For ...................................... 9

    C.   The Recently Produced Video "Inventory" Only Underscores The Government's Failure to Safeguard Dr. R.'s Possessions. ............ 13

        1.   The "inventory" pretext versus what the Government actually did ........................................................................ 16

        2.   The "inspection" pretext versus what the Government actually did ........................................................................ 18

III. ARGUMENT ...................................................................................... 20

    A.   Rule 41 And The Court's Inherent Power Provide Dr. R. With A Vehicle To Obtain Relief. ....................................................... 20

    B.   Dr. R. Is Entitled To Her As-Yet-Unreturned Possessions. ................. 22

    C.   Dr. R. Is Entitled To A Copy Of Inventory Material Related To Her Missing Property And The Court Should Order It Produced. ....... 24

        1.   Dr. R. is "aggrieved by the deprivation of her property" due to the Government's search and seizure and its failure to return or account for all of it and the Court should exercise its Rule 41 jurisdiction .................................... 24

        2.   Dr. R. is entitled to a meaningful inventory of the Government's seizure under Federal Rule Of Criminal Procedure 41(f)(1)(C) and under the Fourth Amendment .......... 25

        3.   The Government told the Magistrate Judge that it would create proper inventories, but the inventories it has provided so far – including the video – are essentially useless. ........................................................................ 26

        4.   Relief requested: the Court should order the Government to return all as-yet-unreturned property to Dr. R. and produce all material that will allow Dr. R. to substantiate her claim that the Government seized gold coins from her and failed to return them. ........................................... 29

IV. CONCLUSION ................................................................................... 30

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Brewster v. Beck*,
    859 F.3d 1194 (9th Cir. 2017) ........................................................................ 24

*United States v. Cardona*,
    897 F. Supp. 802 (S.D.N.Y. 1995) ................................................................ 22

*United States v. Comprehensive Drug Testing, Inc.*,
    621 F.3d 1162 (9th Cir. 2010) ....................................................................... 23

*Demaree v. Pederson*,
    887 F.3d 870 (9th Cir. 2018) ......................................................................... 23

*Doe v. United States*,
    No. 21-cv-2803-RGK-MAR ............................................................... 16, 18, 24

*Does 1-6 v. United States*,
    21-cv-3254-RGK-MAR .................................................................................. 16

*Does I thru XXIII v. Advanced Textile Corp.*,
    214 F.3d 1058, (9th Cir. 2000) ........................................................................ 6

*United States v. Gladding*,
    775 F.3d 1149 (9th Cir. 2014) ....................................................................... 23

*Hunsucker v. Phinney*,
    497 F.2d 29 (5th Cir. 1974) ........................................................................... 20

*United States v. Ibrahim*,
    522 F.3d 1003 (9th Cir. 2008) ....................................................................... 22

*United States v. Kama*,
    394 F.3d 1236 (9th Cir. 2005) ....................................................................... 22

*United States v. Kriesel*,
    720 F.3d 1137 (9th Cir. 2013) ....................................................................... 23

*Lavan v. City of Los Angeles*,
    693 F.3d 1022 (9th Cir. 2012) ....................................................................... 25

*United States v. Martinson*,
   809 F.2d 1364 (9th Cir. 1987) ........................................................... 20

*Otonye v. United States*,
   903 F. Supp. 357 (E.D.N.Y. 1995) ............................................... 21, 22

*Ramsden v. United States*,
   2 F.3d 322 (9th Cir. 1993) .......................................................... 22, 23

*United States v. Rodriguez*,
   No. EP-08-1865-PRM, 2011 WL 5854369
   (W.D. Tex. Feb. 18, 2011) ................................................................ 20

*In re Searches & Seizures*,
   No. 08-SW-0361 DAD, 2008 WL 5411772
   (E.D. Cal. Dec. 19, 2008) ................................................................. 26

*Societe d'Equipments Internationaux Nigeria, Ltd. v. Dolarian
   Cap., Inc.*,
   No. 115CV01553DADSKO, 2016 WL 4191887
   (E.D. Cal. Aug. 8, 2016) .................................................................. 26

**Other Authorities**

3A Fed. Prac. & Proc. Crim. § 690 (4th ed.) .................................... 23, 24

41 C.F.R. § 128-50.101 ......................................................................... 21, 22

Fed. R. Crim. P. 41(f)(1)(C) .................................................................. 25

Fed. R. Crim. P. 41(f)(1)(D) .................................................................. 25

Fed. R. Crim. P. 41(g) ............................................................. 20, 21, 22, 23

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.

## INTRODUCTION

Dr. Linda R. is 80 years old.[1]  About two months ago, the Government seized her retirement savings from her box at U.S Private Vaults.  After counsel demanded its return, Government agents met with counsel and Dr. R. and returned **some** of it.  **But the Government failed to account for or return forty 1 oz. gold coins, worth over $75,000**.

The agents told Dr. R. that they did not know anything about the missing coins.  When counsel asked the agents for a copy of their inventory of Dr. R.'s box, the agents provided a property receipt based on their inventory for Dr. R.'s box that

---

[1]   "[A] party may preserve his or her anonymity in judicial proceedings in special circumstances when the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity."  *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000).  The Ninth Circuit has recognized that such circumstances include situations where, as here, identification would create a risk of physical or mental harm and "anonymity is necessary to preserve privacy in a matter of sensitive and highly personal nature." *Id*. at 1068 (internal quotation marks, citations omitted).  This pleading uses the first initial of Movant Linda R.'s last name in order to protect her security.  She is elderly and lives alone and the discussions about her savings and where she keeps her assets could put her safety at risk.  There is no prejudice to the Government from allowing Dr. R. to proceed without publicizing her full name because Dr. R.'s true name and identity is known to the Government, both because counsel disclosed it when first demanding return of Dr. R.'s property and because Government agents met with Dr. R. (in counsel's presence) to return her property, upon which Dr. R. again provided her full name to the Government.  Moreover, there is no public interest in knowing Dr. R.'s full name because any public interest in providing inventories to persons from whom the Government seized property can be satisfied without public disclosure of her identity.

describes the property as only "Misc. Coins," with no indication of types or quantities.[2]

Counsel immediately contacted the lead AUSA in this matter and advised him of the missing items.  Counsel also asked the AUSA for a copy of the proper inventory of Box 8309, which the AUSA had represented to the Magistrate Judge and to the Court in this matter was required pursuant to FBI written policies in order to protect the agency from claims of theft.[3]  The Government did not respond to these requests, so Dr. R. filed the original version of this Complaint, Dkt. No. 1, seeking a proper inventory of what was seized from her.

After the filing of the original Complaint, the Government sent counsel two video files representing the "video inventory" of Dr. R.'s safe deposit box and claimed the videos prove Dr. R. received all of her property.  (Declaration of Benjamin N. Gluck ("Gluck Decl.") ¶ 2.)  Counsel reviewed the files the same day and discovered that the video inventory is wholly inadequate to show anything of the sort.  (*Id.* ¶ 3.)  In fact, it is entirely useless as any kind of inventory at all because it never purports to display or record all of the contents of the box, much less display them in a manner sufficient to document specific quantities or types of valuable items.  (*Id.*)  On the contrary, given the chaotic and slapdash manner in which Dr. R.'s box was opened and emptied, it is no surprise that items appear to be missing.  In fact, the only thing the video "confirms" is that the Government violated the express mandates of the warrant because (a) Government agents failed to create a proper inventory – even though they promised the Magistrate they would – and (b) they continued "inspecting" the contents of the box long *after* they had

---

[2]   A copy of the receipt, which the agents said reflects the entire inventory, is attached as Exhibit B to the Declaration of Nicole R. Van Dyk and excerpted below.

[3]   The Government has not claimed that inventories were necessary to protect box holders from losing their possessions; it only has alleged they are necessary to protect the Government against fraudulent claims.

1    already identified Dr. R. as the box's owner – even though they promised the

2    Magistrate they wouldn't. (*Id.*)

3          Counsel contacted the Government with these concerns on May 3, the same

4    day the Government sent the video, and asked for the chain-of-custody information

5    as well as any further information in the Government's possession documenting the

6    contents of Dr. R.'s safe deposit box. The Government declined to respond in any

7    way. (*Id.* ¶ 4.) Lacking any other recourse in the face of this stonewalling, Dr. R.

8    files this Amended Complaint.

9          The Government's seizure of Dr. R.'s retirement savings already has caused

10   Dr. R. more than enough stress and anxiety. The Government's loss of tens of

11   thousands of dollars worth of Dr. R.'s coins and lack of any kind of inventory

12   necessary to trace them, coupled with the lack of ***any response at all*** from the

13   Government, only adds to her injury.

14         Dr. R. seeks an order that the Government (1) return all as-yet-unreturned

15   property it took from Box 8309,[4] and (2) provide her with all records reflecting how

16   Box 8309 and its contents were searched, seized, and handled, including all

17   inventories, all other records of these processes, all chain-of-custody documentation,

18   and all written protocols that the Government purportedly followed.

19                                      **II.**

20                                 **BACKGROUND**

21   **A.    The Government's Search And Seizure Of Dr. R.'s Property At USPV**

22         Dr. R. is a semi-retired octogenarian who lives in the Los Angeles area.

23   (Declaration of Nicole R. Van Dyk ("Van Dyk Decl.") ¶ 2.) For over two decades,

24   _____

25   [4]   As of the date of this filing, the Government has not returned the cash it took
     from Dr. R.'s box. The Government has assured Dr. R. that it will wire her the
26   money but it has refused to say how much it took, how much it will return, or
     exactly how long that will take. The Government's apparent inability to locate and
27   return the coins it seized from Dr. R. does not inspire confidence in the smooth
28   return of her money.

1   she has invested her retirement savings in a collection of gold and silver coins she

2   stored in recent years in Box 8309 at the U.S. Private Vaults ("USPV") facility at

3   9182 West Olympic Blvd. in Beverly Hills, along with cash from a property sale

4   nearly three decades ago.  (*Id*.)  Dr. R. utilized her box at USPV to protect her

5   savings from theft and what she perceived to be instability in the financial and

6   banking systems.  (*Id.*)  As of March 2021, Dr. R.'s box contained a significant

7   portion of her retirement assets, as she lost her primary source of income from a

8   rental property due to the COVID-19 crisis.  (*Id.*)

9            As this Court is now well aware, beginning on March 22, 2021, the

10  Government executed search and seizure warrants at USPV.[5]  Among other things,

11  Government agents seized each of the hundreds of safe deposit boxes housed at the

12  facility, along with the contents of each box belonging to the individual box holders

13  who rented them.  Dr. R.'s box, No. 8309, and its contents were among those seized.

14  (*Id.* ¶ 3.)

15  **B.    The Government Returned Some Of Dr. R.'s Property But Items Remain**

16          **Missing And Unaccounted For**

17          Immediately after the seizure of her property, Dr. R. contacted the

18  Government, identified herself as the owner of Box 8309, and provided a detailed

19  description of the contents of that box.  (*Id.* ¶ 4.)  In return, she received a form

20  email saying she would be contacted within two months.  (*Id.*)  Because the stress

21  from the seizure and the Government's non-response was exacerbating Dr. R.'s

22  health issues, counsel sent an April 16, 2021, letter to AUSA Andrew Brown

23  requesting further information regarding how Dr. R. could recover her property.  (*Id.*

24  ¶ 5, Ex. A.)  On April 19, 2021, the Government informed Dr. R. that it would

25  return her property on April 21, 2021.

26

27  [5]   Dr. R. requests that the Court take judicial notice of the filings before this Court

28  arising from the search of U.S. Private Vaults.

On the designated day, Dr. R. and counsel met with two FBI agents to obtain the gold and silver coins the Government seized from her box at USPV.[6]  (Van Dyk Decl. ¶ 6.)  When the agents arrived with Dr. R.'s property, they verified her ownership of Box 8309 by testing her UPSV key to open the lock on the door to Box 8309, which had been detached from the rack of safe deposit boxes and which the agents had brought with them to the meeting.  (*Id*.)  After Dr. R.'s key successfully opened the lock for Box 8309, the agents provided Dr. R. with a

---

[6]   The Government has informed counsel that the cash seized from Dr. R's box was deposited into the Government's forfeiture account and the cash equivalent will be wired back to Dr. R. at a future date.  (Van Dyk Decl. ¶ 7.)  Nearly a month later, Dr. R. has not yet received her cash.  And, as noted above, the Government has not informed her how much cash they seized or will return.

property receipt for her box, which they represented reflected the information in the "inventory" completed during the search and seizure at USPV:



(Van Dyk Decl. ¶ 8, Ex. B.)  Notably, the receipt – and apparently the "inventory" from which it was allegedly precisely copied – describes neither the type nor the amount of coins seized.

1    In anticipation of meeting with the agents, and to ensure the return of all of

2  the property that had been contained in her box, Dr. R. prepared a detailed list

3  describing each type of coin she had in her box at the time it was seized, and how

4  many coins of each type.  (*Id*. ¶ 9.)  She and her counsel referred to that list when

5  they counted the coins returned by the agents, with the agents' assistance, and

6  discovered that at least forty 1 oz. Gold American Eagle coins, with an estimated

7  value of about $75,000,[7] were missing.  (*Id*.)  At the conclusion of the review, the

8  agents amended the property receipt to reflect Dr. R.'s claim for the missing coins.

9  (*Id*. ¶ 10.)  They also assured Dr. R. and counsel that the search, seizure, and

10  inventory of her property were well-documented by photographs and video.  They

11  conceded that due to the sheer number of boxes at USPV, the agents conducting the

12  process opted to use general, rather than detailed, descriptions in the written

13  inventories as the search continued.  (*Id*.)

14    In an effort to reassure Dr. R. and to secure the swift return of her missing

15  property, counsel sent letters to lead AUSA Andrew Brown on April 21 and 22

16  advising him of the missing property and requesting that the Government provide

17  Dr. R. with: (1) a copy of all inventories of her property, (2) copies of all

18  photographs and videos documenting the search, seizure, or contents of her box, and

19  (3) copies of any procedures or protocols used to seize and inventory her property.

20  (*Id*. ¶ 11, Exs. C, D.)  Counsel also requested that the Government respond to their

21  request with urgency, as the apparent loss of a portion of her retirement savings was

22  (and is) causing Dr. R. severe distress and exacerbating her poor health.  (*Id*.)  The

23  Government did not acknowledge those requests, so Dr. R. filed the original

24  Complaint in this matter on April 26, 2021.

25

26

27  _____

[7]   According to www.monex.com, the purchase price of a 1 oz. Gold American

28  Eagle coin as of April 22, 2021, was $1907.30.

**C.      The Recently Produced Video "Inventory" Only Underscores The Government's Failure to Safeguard Dr. R.'s Possessions**

On May 3, 2021, after Dr. R. filed the original Complaint in this matter, the Government sent counsel two video files representing the "video inventory" of Dr. R.'s box.  (Gluck Decl. ¶ 2.)  Mr. Brown asserted to counsel that the FBI agent(s) had carefully reviewed video and the video confirmed that what the FBI gave Dr. R. was indeed all of her possessions that had been in Box 8309.  Mr. Brown demanded that counsel review the videos and then "dismiss" Dr. R.'s suit.  (Van Dyk. Decl. ¶ 15, Ex. G.)

Counsel immediately reviewed the video files and found that, contrary to Mr. Brown's description, the video does not and cannot act as any kind of inventory to determine whether items are missing from Dr. R.'s box.  Instead, the video inventory shows (1) the agents did not display or track the specific contents or quantity of valuables that they removed from Box 8309, and thus failed to create the inventory that ostensibly was the entire reason for interfering with Dr. R.'s possessions in the first place; (2) the removal and handling of Dr. R.'s property was conducted in such a shambolic and disorganized manner that it is no surprise that items were misplaced, lost, or worse; and (3) although the Government failed to do the one thing it promised the Magistrate Judge it *would* do – namely, create a proper inventory – the Government instead did the one thing it promised the Magistrate Judge it *would not* do –  namely, search and image every document in Dr. R.'s box, even after agents identified the owner.

According to the videos sent by the Government, the review of Box 8309 took about 45 minutes.[8]  The two video files appear to be filmed seriatim and they were produced to counsel without sound.[9]  The attached Declaration of Benjamin N.

---

[8]   Specifically, file 00055.MTS is 29:50 long and file 00056.MTS is 14:57 long.
[9]   Specifically, the sound track on both videos is just a buzzing noise.

Gluck contains a number of screen shots giving an overview of the video and demonstrating the problems with the Government's search, inventory, and inspection.  A brief summary of the agents' actions follows here:

- Agents open the door to Dr. R.'s box, revealing an envelope taped to the outside of the interior bin.  They open the envelope and display to the camera a beneficiary form identifying Dr. R. as the owner of the box and naming her son as a contact person in case of her death.  This form includes street addresses, email addresses, and telephone numbers for Dr. R. and her son.  The agents also remove and display to the camera a photocopy of Dr. R.'s California driver's license.[10] (Gluck Decl. ¶¶ 6-9.)

- An agent places the interior bin on a folding chair set in a narrow aisle littered with debris from the search.  The agent opens the bin, revealing a stack of sealed FedEx-type envelopes.  (*Id.* ¶¶ 10-11.)

- The video camera is set up in a narrow aisle between the rows of boxes at USPV.  The camera's field of view is mostly blocked by the agent standing between the camera and the box.  Because of the angle, the camera cannot display the full interior of the box and for much of the time, the box is outside the camera's view entirely.  (*Id.* ¶¶ 11-12.)

- An agent opens envelopes and appear to remove documents that are in the box.  Agents make a video record (by zooming and focusing the video camera) of both sides of every document in the box.[11]  The agent places the documents outside the camera's view.  (*Id.* ¶¶ 12-15.)

---

[10]   At this point, the agents have clearly "determined ownership" of the box and pursuant to the inventory-and-notification instructions in the affidavit, the inspection "should extend no further."  (Van Dyk Decl. ¶ 12, Ex. E at n.40.)  As described below, the agents blatantly disregarded this instruction.

[11]   Again, this is *after* they have determined ownership, which means their conduct

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- An agent tears open numerous sealed envelopes and briefly "flashes" their contents toward the video camera before handing each to someone outside the camera's view.  Though one can see that these envelopes contain coins, it is impossible to see how many or what types.  Some contents of at least one envelope fall to the floor and the agent works off camera to find the dropped item(s).  (*Id.* ¶¶ 16-21.)

- The agent opens more envelopes and photographs the documents inside.  (*Id.* ¶¶ 22-26.)

- The agent opens an envelope and removes a white-wrapped cylinder that could contain coins.  The agent does not display it in a way that makes it possible to know what the cylinder contains.  From the way the agent holds the envelope, it is clear that the envelope contains substantial additional weight.  The agent tilts the now-open envelope toward the camera but the angle does not permit the camera to see what remains in the envelope at all.  The agent then hands the envelope off camera without ever displaying anything other than the single cylinder the agent took out.  (*Id.* ¶¶ 27-29.)

- The agent removes some small cardboard boxes and opens their tops toward the camera.  The boxes appear to contain more white-wrapped cylinders but the agent does not display anything in a manner that makes clear what the cylinders contain or what is under the top layer of the boxes' contents.  (*Id.* ¶ 30.)

- After the agent removes each item, the agent places the item somewhere off-camera.  At the end of the search, the agent brings back into display a number of plastic bags, each containing numerous items apparently removed from Box 8309.  They are not displayed to the

falls outside any authorization of the warrant and is an illegal search.

1    camera in a way that makes it possible to know exactly what each

2    contains.  While the tops of the bags appear to be partially closed with

3    paper seals, there are openings around the seals wide enough to allow

4    the contents to be removed or to fall out without breaking the seal.  (*Id.*

5    ¶¶ 31-32.)

6    In short, the "video inventory," no matter how closely it is reviewed, can do

7    nothing to establish how many tubes of coins the Government took from Dr. R.'s

8    safedeposit box.  On the contrary, considering the shambolic manner in which the

9    contents were handled – perched on a folding chair, then torn open in middair, then

10   waved toward the camera, then handed out of view, and finally placed in evidence

11   bags that were not even properly sealed – it is no surprise that items could be lost,

12   misplaced, or worse.

13   **1.    The "inventory" pretext versus what the Government actually did**

14   In its representations to this Court, the Government repeatedly has justified its

15   search and seizure of the contents of the USPV "nests" as an inventory it was

16   *required* to conduct.  *See, e.g.*, *Doe v. United States*, 21-cv-2803-RGK-MAR (Dkt.

17   No. 15) at 12:10-14 (Decl. of AUSA Andrew Brown); *Does 1-6 v. United States*,

18   21-cv-3254-RGK-MAR (Dkt. No. 16) at 2:28-3:4.  It claims that the inventory

19   searches were "authorized in the seizure warrant and discussed in the affidavit

20   supporting it."  *Does 1-6*, *supra*, at 3:2-3.  .  It is therefore worth comparing the

21   warrant's and the affidavit's contemplated "inventory" to what the government

22   actually did.  Even a cursory comparison shows that the Government's effort to

23   whitewash its investigatory search as an "inventory" fails entirely.

24   To start, in issuing the warrant, the Magistrate expressly limited the

25   authorized search of the contents of the boxes by stating that "[t]his warrant does not

26   authorize a criminal search or seizure of the contents of the safety deposit boxes.  In

27   seizing the nests of safety deposit boxes, agents shall follow their written inventory

28

1  policies to protect their agencies and the contents of the boxes." (Van Dyk Decl.

2  ¶ 13, Ex. F.)

3  The supporting affidavit set out the Government representations, on which the

4  Magistrate relied, regarding that inventory search:

5  The warrants authorize the seizure of the nests of the boxes themselves,

6  not their contents. By seizing the nests of safety deposit boxes, the

7  government will necessarily end up with custody of what is inside

8  those boxes initially. Agents will follow their written inventory

9  policies to protect their agencies from claims of theft or damage to the

10  contents of the boxes, and to ensure that no hazardous items are

11  unknowingly stored in a dangerous manner.

12  (*Id.* ¶ 12, Ex. E (emphasis in original).)

13  Obviously, a written inventory that records only "Misc. Coins" does nothing

14  to protect the Government from claims of theft or damage. Nor does a video

15  inventory that never shows all of the box's contents. On the contrary, the video

16  shows that a far better way to protect against such claims would have been *not to*

17  *break the seals on the envelopes from coin sellers.* Common sense says that the

18  Government could have and should have returned the items *sealed* to their owner,

19  obviating any potential claims.[12] Even better, the Government simply could have

20  sealed the entire interior bin and returned it to Dr. R. with that seal intact.

21  Instead, the Government tore open every sealed container *and then neglected*

22  *to document their contents at all*, thereby *creating* the basis for claims of theft where

23  none otherwise would have existed. In short, all of the tearing open of sealed

24  envelopes, all of the intrusion into Dr. R.'s private possessions (with no claim of

25

26  _____

[12]  The Government might claim that they had to ensure that no hazardous items

27  were in the envelopes. Apart from the unreasonableness of this purported concern,

the fact that the Government did not even open all of the packages shows that the

28  agents were (rightly) not concerned about this.

probable cause), and all of the handling of her valuables by unauthorized strangers, did the *opposite* of protecting the agency or Dr. R.  Instead, it subjected Dr. R. to a risk of loss of her property, and the Government to the risk of claims stemming from that loss.  So why did the Government create such unnecessary risk in the first place?  Sadly, the answer is obvious.  Despite the Government's effort to whitewash it, Government was doing "a criminal search," not an "inventory."  And because the Government admitted it had no probable cause for the contents of Dr. R.'s box, that "criminal search" was expressly forbidden by the warrant.

**2.**      **The "inspection" pretext versus what the Government actually did**

In addition to its purported "inventory search," the Government also claimed it was required to inspect the contents of the boxes in order to identify their owners so that the Government could return their property.  *See, e.g.*, *Doe*, *supra*, Dkt. 7-2 at 2:24-26.

The seizure warrant (drafted by the Government) provides: "Also in accordance with their written policies, agents shall inspect the contents of the boxes in an effort to identify their owners in order to notify them so that they can claim their property."  (Van Dyk Decl. ¶ 13, Ex. F.)  Moreover, the supporting affidavit assured the Magistrate:

> Agents will attempt to notify the lawful owners of the property stored
> in the boxes how to claim their property, such as by posting that
> information on the internet or at USPV itself, or by contacting the
> owners directly.  In order to notify the owners directly, agents will, in
> accordance with their policies regarding an unknown person's property,
> look for contact information or something which identifies the owner.
> (USPV recommends that box renters include their or their designees'
> telephone numbers on a note in the box in the event that USPV
> removes the contents for nonpayment of rental fees.)

1     [Footnote:] The FBI policy regarding taking custody of an

2     unknown person's property provides, in part, that agents "inspect the

3     property as necessary to identify the owner and preserve the property

4     for safekeeping."  The inspection "should extend no further than

5     necessary to determine ownership."

6  (*Id.* ¶ 12, Ex. E.)

7     The video of the "inspection" of Dr. R.'s box puts the lie to this.  As noted

8  earlier, the agents knew that Dr. R. owned the contents of Box 8309 when they

9  opened the envelope she taped to the *outside* of the interior bin.  (*See* Section II.C,

10 *supra*.)  Inside this envelope they found her full contact information, including

11 address, telephone, email, and even a copy of her driver's license.  They also found

12 her designation of her son as her beneficiary and his complete contact information.

13 This was all known to the Government within the *first minute* of the 44-minute

14 review of Dr. R.'s box.[13]  Past that point, Government represented to the Magistrate

15 that "[t]he inspection 'should extend no further.'"  So why did the agents – even

16 after knowing who owned the property – carefully photograph every page and Post-

17 It note in the box?  Indeed, the *only* contents of the box that they made a full and

18 careful photographic record of were the documents, not the valuables.  Why?

19 Again, the answer is clear: they were not doing an "inspection" to determine

20 ownership; they were doing a "criminal search."  And that criminal search was

21 expressly forbidden.

22

23

24

---

25 [13]   The video timer begins at 0:00:00, before the agents removes the interior bin
   from Box 8309.  The agent removes the bin, opens the sealed envelope taped to the
26 top, removes and displays to the camera all pages of the beneficiary form (including
   Dr. R.'s contact information and that of her son), and then displays the copy of Dr.
27 R.'s driver's license.  The display of the drivers license is complete by 0:00:56.
28 (Gluck Decl. ¶¶ 6-9 (including screenshots showing time counter).)

# III.

# ARGUMENT

**A.    Rule 41 And The Court's Inherent Power Provide Dr. R. With A Vehicle To Obtain Relief**

Federal Rule of Criminal Procedure 41(g) provides:

> **Motion to Return Property.**  A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return.  The motion must be filed in the district where the property was seized.  The court must receive evidence on any factual issue necessary to decide the motion.  If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

Dr. R. is "aggrieved . . . by the deprivation of property," namely the forty 1 oz. Gold American Eagle coins that the Government has not returned to her.  Dr. R. seeks the records that will help her establish her claim.  An order requiring the production of these records to Dr. R. is easily within the equitable powers granted to the Court by Rule 41 as well as the Court's inherent power.

Rule 41 is clear that "in a motion for return of property, as with any other equitable action, a court may fashion *any* appropriate relief that comports with traditional equitable principles" absent "clear Congressional command to exclude certain forms of relief."  *United States v. Rodriguez*, No. EP-08-1865-PRM, 2011 WL 5854369, at *3 (W.D. Tex. Feb. 18, 2011); *Hunsucker v. Phinney*, 497 F.2d 29, 34 (5th Cir. 1974) ("Rule 41 is a crystallization of the principle of equity jurisdiction.  That equity jurisdiction persists as to situations not specifically covered by the Rule."); *see also United States v. Martinson*, 809 F.2d 1364, 1367 (9th Cir. 1987) (reversing denial of Rule 41(g) motion because "[i]t is the historic purpose of equity secure complete justice.  The courts will be alert to adjust their remedies so as

1   to grant the necessary relief."). The guiding principle of Rule 41(g) is

2   "reasonableness under all of the circumstances." Fed. R. Crim. P. 41(g) Advisory

3   Comm. Notes (1989), 124 F.R.D. 397, 427-29.

4        In addition to the power granted by Rule 41, the Court has the inherent

5   equitable power to consider motions for return of property. "This power stems from

6   the court's disciplinary authority over attorneys appearing before it as officers of the

7   court. This inherent power also extends to federal agents charged with 'observ[ing]

8   'standards for law enforcement' established by 'the federal Rules governing

9   searches and seizures.'" *Otonye v. United States*, 903 F. Supp. 357, 360 (E.D.N.Y.

10   1995) (citations omitted).

11        Where, as here, the Government concedes that it must return a claimant's

12   property, the Government bears the initial burden of proving that it "observed

13   standards . . . governing searches and seizures," and handled the property consistent

14   with proper protocols:

15        Since, as previously discussed, plaintiff's constitutional rights under the

16        Fourth Amendment are implicated, it makes sense that the government

17        should initially bear the burden of proving that it dealt with plaintiff's

18        property in accordance with regulations prescribed in 41 C.F.R. §

19        128.50–101[14] or other acceptable standards. Once this showing is

20

21   [14]   This regulation applies to Justice Department agencies and provides:

22     Each bureau shall be responsible for establishing and maintaining inventory
  records of its seized personal property to ensure that:

23     (a) The date the property was seized is recorded;

24     (b) All of the property associated with a case is recorded together under the
  case name and number;

25

26     (c) The location of storage of the property is recorded;

27     (d) A well-documented chain of custody is kept; and

28     (e) All information in the inventory records is accurate and current.

1   made, the burden should then shift to the claimant to demonstrate the

2   existence of the claimed property.

3   *Id.* at 363 n.8; *see also United States v. Cardona*, 897 F. Supp. 802, 804 (S.D.N.Y.

4   1995) ("Clearly, the Government, in order to defeat a motion for the return of seized

5   property, must provide some evidentiary proof accounting for the property seized.").

6   Thus, the Government should be prepared to provide this information.

7   Where, as here, no criminal proceeding is pending against a Rule 41(g)

8   movant, the district court considers four factors in deciding whether to exercise

9   jurisdiction over the movant's request for relief:  whether "(1) the Government

10  displayed a callous disregard for the constitutional rights of the movant; (2) the

11  movant has an individual interest in and need for the property he wants returned; (3)

12  the movant would be irreparably injured by denying return of the property; and (4)

13  the movant has an adequate remedy at law for the redress of his grievance."  *United*

14  *States v. Kama*, 394 F.3d 1236, 1238 (9th Cir. 2005) (quoting *Ramsden v. United*

15  *States*, 2 F.3d 322, 324-325 (9th Cir. 1993)) (internal citation marks omitted).  Not

16  all factors must weigh in the movant's favor for the district court to exercise

17  jurisdiction; rather, a court engages in a balancing test.  *Ramsden*, 2 F.3d at 326

18  (exercising jurisdiction over Rule 41(g) motion despite finding that the plaintiff had

19  not shown irreparable injury).

20  Because Dr. R. has not been charged in any criminal proceeding – indeed the

21  Government has already returned some of her property and concedes it had no

22  probable cause to search or seize it – her Rule 41 motion is treated as a civil

23  equitable proceeding.  *See*, *e.g., United States v. Ibrahim,* 522 F.3d 1003, 1008 (9th

24  Cir. 2008).

25  **B.    Dr. R. Is Entitled To Her As-Yet-Unreturned Possessions**

26  Federal Rule of Criminal Procedure 41(g) empowers the Court to order the

27

28  41 C.F.R. § 128-50.101.

1   return of both lawfully and unlawfully seized property.  The Rule provides that

2   "[a]person aggrieved by . . . the deprivation of property may move for the property's

3   return" and "[i]f it grants the motion, the court must return the property to the

4   movant[.]"  Fed. R. Crim. P. 41(g).  Rule 41(g) offers recourse for anyone "whose

5   property or privacy interests are impaired by [a] seizure."  *United States v.*

6   *Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1173 (9th Cir. 2010), overruled

7   in part on other grounds as recognized by *Demaree v. Pederson*, 887 F.3d 870, 876

8   (9th Cir. 2018).  Even if the original seizure was legal, Rule 41 provides for relief

9   for the continued improper retention of property: "As amended, Rule 41[g] provides

10  that . . . a person whose property has been lawfully seized may seek return of

11  property when aggrieved by the government's continued possession of it."  Fed. R.

12  Crim. P. 41(g), Advisory Comm. Notes (1989), 124 F.R.D. 397, 427-429.

13       A court determines whether property should be returned to its owner based on

14  "reasonableness under all of the circumstances."  Fed. R. Crim. P. 41(g) Advisory

15  Comm. Notes (1989), 124 F.R.D. 397, 427-29; *Ramsden*, 2 F.3d at 326.  The

16  standard of proof is preponderance of the evidence.  *See Motion to Return Property*,

17  3A Fed. Prac. & Proc. Crim. § 690 (4th ed.) (citing cases).  Importantly, where, as

18  here, the property at issue is not being held as part of a criminal search or seizure,

19  the property owner "is presumed to have a right to [the property's] return, and the

20  government has the burden of demonstrating that it has a legitimate reason to retain

21  the property."  *United States v. Gladding*, 775 F.3d 1149, 1152 (9th Cir. 2014)

22  (citing *Martinson*, 809 F.2d at 1369 (alteration in original).  Indeed, a property

23  owner's Rule 41(g) motion "should presumptively be granted if the government no

24  longer needs the property for evidence."  *United States v. Kriesel*, 720 F.3d 1137,

25  1144 (9th Cir. 2013).  The Government can rebut this presumption only with

26  admissible evidence; mere arguments or assertions by Government attorneys are not

27  sufficient.  *See Gladding*, 775 F.3d at 1153 ("[R]epresentations are not evidence

28  unless adopted by the opponent.  The government failed to submit any evidence

1  [supporting] a 'legitimate reason' for retention of the noncontraband files.  For that

2  reason, the government could not have carried its burden of proof[.]"); *Motion to*

3  *Return Property*, 3A Fed. Prac. & Proc. Crim. § 690 (4th ed.) ("If factual issues

4  need to be resolved to decide the motion, the court must receive evidence on the

5  factual issues.").

6        Even a temporary delay in returning property has Fourth Amendment

7  ramifications.  For example, the Ninth Circuit has found that a "30-day impound is a

8  'meaningful interference with an individual's possessory interests'" under the

9  Fourth Amendment.  *Brewster v. Beck*, 859 F.3d 1194, 1196 (9th Cir. 2017)

10  (quoting *Soldal v. Cook County*, 506 U.S. 56, 61 (1992)).  This is true even when the

11  original seizure was justified: "The Fourth Amendment doesn't become irrelevant

12  once an initial seizure has run its course. . . .  Thereafter, the government must cease

13  the seizure or secure a new justification."  *Id.* at 1197 (citing *United States v.*

14  *Jacobsen*, 466 U.S. 109, 124 & n.25 (1984)).  Here, the Government says the

15  inventory and inspection were completed no later than March 26, 2021, when it

16  ended its search of USPV.  (Govt. Opp. to Ex Parte App. for TRO and OSC at 2,

17  *Doe v. United States*, No. 2:21-cv-02803, Dkt. 15.)  But the Government has

18  continued the "impound" of Dr. R.'s property for well over 30 days (and counting)

19  and still refuses to return it.  The Government has no authority for the continued

20  retention of Dr. R.'s property, and that retention violates the Fourth Amendment.

21  **C.**    **Dr. R. Is Entitled To A Copy Of Inventory Material Related To Her**

22         **Missing Property And The Court Should Order It Produced**

23         **1.**    **Dr. R. is "aggrieved by the deprivation of her property" due to the**

24               **Government's search and seizure and its failure to return or**

25               **account for all of it and the Court should exercise its Rule 41**

26               **jurisdiction**

27        "The Fourth Amendment protects two types of expectations, one involving

28  'searches,' the other 'seizures.'  A 'search' occurs when the government intrudes

upon an expectation of privacy that society is prepared to consider reasonable.  A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property."  *Lavan v. City of Los Angeles*, 693 F.3d 1022, 1027 (9th Cir. 2012) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)).  There is no question both occurred here.  All of Dr. R.'s possessions in Box 8309 were searched and were seized—but at issue here are solely the missing gold coins.

The Government's failure to account for 40 gold coins and its provision of patently deficient receipts identifying unknown quantities of unknown "Misc. Coins" satisfies all four elements of Rule 41's jurisdictional query: (1) failing to create or provide any useful inventory and losing track of Dr. R.'s retirement funds is easily callous; (2) Dr. R. has an individual interest in and need for her retirement funds; (3) she would be irreparably injured by the loss of her possessions; and (4) she has no adequate remedy at law for the redress of this grievance.  Thus, Dr. R. submits that the Court should exercise its jurisdiction to help her.

> **2.      Dr. R. is entitled to a meaningful inventory of the Government's seizure under Federal Rule Of Criminal Procedure 41(f)(1)(C) and under the Fourth Amendment**

Rule 41(f)(1)(C) requires that "the officer executing the warrant must give a copy of the warrant and a receipt for the property taken to the person *from whom*, or from whose premises, *the property was taken* or leave a copy of the warrant *and receipt* at the place where the officer took the property."  (Emphasis added).  Rule 41(f)(1)(D) provides that the magistrate judge designated on the warrant "must, on request, give a copy of the inventory *to the person from whom*, *or from whose premises*, *the property was taken* and to the applicant for the warrant."  (Emphasis added).  As set forth above, Dr. R. is a person from whom property was seized during the execution of the USPV warrant and the property was taken from her

premises, *i.e.*, the interior of Box 8309.  Thus, Dr. R.'s request for a meaningful inventory and inventory records is consistent with her express rights under Rule 41.

In addition to Rule 41, courts of this Circuit have universally recognized that an individual whose property is seized by the Government also has a private "right of access to search warrant materials, including the supporting affidavit, grounded in the Fourth Amendment."  *In re Searches & Seizures*, No. 08-SW-0361 DAD, 2008 WL 5411772, at *3 (E.D. Cal. Dec. 19, 2008) (collecting cases); *see also Societe d'Equipments Internationaux Nigeria, Ltd. v. Dolarian Cap., Inc.*, No. 115CV01553DADSKO, 2016 WL 4191887, at *1 (E.D. Cal. Aug. 8, 2016) (recognizing "a private right of access under the Fourth Amendment to the affidavit in support of the search warrant during the pre-indictment stage, which vests in the individual or entity whose property was seized").  Accordingly, Dr. R.'s Fourth Amendment right of access also entitles her to copies of the warrant materials.

### 3. The Government told the Magistrate Judge that it would create proper inventories, but the inventories it has provided so far – including the video – are essentially useless

The affidavit that the Government relied on to obtain the USPV search and seizure warrants assured the Magistrate Judge that "Agents will follow their written inventory policies to protect their agencies from claims of theft or damage to the contents of the boxes[.]"  (Van Dyk Decl. ¶ 12, Ex. E.)  The warrant itself echoes this representation to the Magistrate Judge when it says: "In seizing the nests of safety deposit boxes, agents shall follow their written inventory policies to protect their agencies and the contents of the boxes."  (*Id.* ¶ 13, Ex. F.)  But the inventories the Government has provided do nothing of the sort.

First, while Government has unsealed the "inventory" it filed with the search warrant return, that inventory says nothing at all about the contents or seizure of *any* contents of *any* boxes, much less Box 8309.  Instead, it says only that only that the

1   Government seized a "Nest of Safe Deposit boxes, including shelving, boxes,

2   hardware and bond tin":

RETURN

| DATE WARRANT RECEIVED | DATE AND TIME WARRANT EXECUTED | COPY OF WARRANT AND RECEIPT FOR ITEMS LEFT WITH |
|---|---|---|
| 3/17/2021 | 3/22/2021 - 7:59 AM | AT THE BUSINES |

INVENTORY MADE IN THE PRESENCE OF   SA Lynne K. Zellhart

INVENTORY OF PROPERTY SEIZED PURSUANT TO THE WARRANT

1. Asus Zen pad Model Po23
2. Dell Inspiration
3. Dell Vostro P/N 40.3GA01.021
4. USPV Database Exports from Cloud
5. Money Counter - Cummins/Allison w/power cord
6. Money Counter - Bill Counter + power cord
7. Iris ID icam 700 (1)
8. Iris ID icam 700 (2)
9. Schlange Biometric Hand Key CR (1)
10. Schlange Biometric Hand Key CR (2)
11. Nest of Safe Deposit boxes, including shelving, boxes, hardware and bond tins.
12. Box of Keys
13. Loose Keys

CERTIFICATION

I declare under penalty of perjury that I am an officer who executed this warrant and that this inventory is correct and was returned along with the original warrant to the designated judge through a filing with the Clerk's Office.

Date: 4/9/2021   _Lynne K. Zellm_
Executing officer's signature

SA Lynne K. Zellhart
Printed name and title

(Van Dyk Decl., Ex. F.)

From this "inventory," one has no hint that the Government spent an entire

week forcing open each of the "safe deposit boxes," inventorying their contents, and

carrying away the possessions of hundreds of people, including Dr. R.'s retirement

funds.  As Dr. R.'s claim makes clear, this "inventory" does nothing to protect the Government against a claim of theft.

The receipt agents gave to Dr. R. on April 21 with the return of *some* of her property likewise is essentially useless.  "Misc. Coins" could mean anything from two pennies, worth $0.02, to any number of 1933 Double Eagles, each worth over $7 million.[15]  Dr. R. does not claim to have had any Double Eagles in Box 8309. But she did have forty 1 oz. Gold American Eagle coins that have yet to be returned and there is no way to know from the receipt the Government gave her what happened to them.  Moreover, because the agents who returned Dr. R's property said that they copied this receipt word-for-word from the inventory of her box conducted at USPV, it is unknown to Dr. R. whether the Government *even has* a properly detailed inventory.

Indeed, it appears that the receipt provided to Dr. R. may not be unique in its deficiency.  Undersigned counsel also represents another elderly box holder and corresponded with the Government about that box holder's possessions too.  After counsel threatened to file a motion, the Government indicated that it would return that second box holder's possessions, and it did so on April 19, 2021.  This second box holder had gold and silver coins (and some papers) in his box, but, similar to Dr. R.'s case, the property receipt that the Government provided listed only "various miscellaneous documents, and various silver and gold colored coins"[16]  (Van Dyk Decl. ¶ 14.)  Again, this description is effectively of no use at all.

The Government told the Magistrate Judge that it would create a proper inventories in order to protect the government agencies, and told counsel that it only searched the contents of the safe deposit boxes to create these inventories to protect

---

[15]  https://en.wikipedia.org/wiki/List_of_most_expensive_coins

[16]  It should be noted that at this point this second client is unsure whether he received everything that had been in his box.

the Government from claims of theft or damage.  Given that the inventories the Government has so far provided are entirely useless for this ostensible purpose, it is hard to believe that the Government does not have more thorough inventory records that could actually protect it (and the box holders) by properly listing the items the Government took.  Indeed, while the video produced to Dr. R. by the Government does nothing to show the types or quantities of coins that Dr. R. had in her box, the agents assured counsel that there are also photographic records and there should be additional chain-of-custody or inventory information.

**4.      Relief requested: the Court should order the Government to return all as-yet-unreturned property to Dr. R. and produce all material that will allow Dr. R. to substantiate her claim that the Government seized gold coins from her and failed to return them**

The Government has stonewalled Dr. R.'s requests to find out about her missing property.  Therefore, pursuant to the Court's equitable power under Rule 41 as well as its inherent equitable power, Dr. R. requests that the Court order the Government to:

(a) Return to Dr. R. all as-yet-unreturned property seized from Box 8309;[17] and

(b) Produce to Dr. R. all documents in the Government's possession reflecting the contents of Box 8309, including, without limitation, any and all:

         i.     As yet-unproduced inventories or property receipts for the contents of Box 8309;

         ii.    As-yet unproduced video or photographs or other documents reflecting the contents of Box 8309 and their handling;

---

[17]  To the extent the Government contends that it has already produced to Dr. R. all property that was in Box 8309 as of the date of the Government's seizure, Dr. R. reserves the right to request an evidentiary hearing and present further evidence on the dispute.

iii.   Chain-of-custody or similar documentation related to the contents of Box 8309; and

iv.   Written inventory policies the Government referenced in the affidavits and search warrants for U.S. Private Vaults and/or purported to follow in the handling of Box 8309 and its contents.

## IV.

## CONCLUSION

The Government concedes that it must return Dr. R.'s retirement savings.  But it has yet to account for approximately $75,000 of that savings and it has not provided any proper receipt or inventory—items to which Dr. R. is entitled under Rule 41 and under the Fourth Amendment.  Because the Government refuses to even respond to her requests, Dr. R. respectfully requests an order that any as-yet-unreturned property must be immediately returned and that the Government immediately provide all inventory information in its possession.

DATED:  May 17, 2021                    Respectfully Submitted,

Benjamin N. Gluck
Nicole R. Van Dyk
Naomi S. Solomon
Ashley D. Bowman
Bird, Marella, Boxer, Wolpert, Nessim,
Drooks, Lincenberg & Rhow, P.C.

By: _____
                 Benjamin N. Gluck
           Attorneys for Movant Dr. Linda R.