Benjamin N. Gluck - State Bar No. 203997
    bgluck@birdmarella.com
Nicole R. Van Dyk - State Bar No. 261646
    nvandyk@birdmarella.com
Naomi S. Solomon - State Bar No. 321357
    nsolomon@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile:  (310) 201-2110

Attorneys for Movant Dr. Linda R

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| IN RE SEARCH AND SEIZURE OF BOX NO. 8309 AT U.S. PRIVATE VAULTS<br><br><br>Plaintiff,<br><br>UNITED STATES OF AMERICA,<br><br>Defendant, | CASE NO. 2:21-cv-3554 RGK (MAR)<br><br>**MOVANT DR. LINDA R.'S OPPOSITION TO GOVERNMENT'S MOTION TO DISMISS**<br><br>*[Filed concurrently with Declaration of Benjamin N. Gluck]*<br><br>Date:    Aug. 16, 2021<br>Time:    9:00 a.m.<br>Crtrm.:  850<br><br>Assigned to Hon. R. Gary Klausner |

3736790.3

# **<u>TABLE OF CONTENTS</u>**

<u>Page</u>

I.      INTRODUCTION ............................................................................................4

II.     THE GOVERNMENT'S ARGUMENTS ABOUT LACK OF
        JURISDICTION ARE BASED ON A MISREPRESENTATION OF
        DR. R.'S CLAIMS ..........................................................................................5

        A.      Dr. R.'s claims cover much more than just the unreturned coins,
                including hundreds of thousands of dollars of unreturned cash .............5

        B.      The Government misrepresents Dr. R.'s position with respect to
                the as-yet- unreturned coins ...................................................................6

        C.      The Government's asserted administrative remedy is entirely
                inapplicable ............................................................................................8

III.    THE COURT SHOULD REJECT THE GOVERNMENT'S
        CAVALIER DISMISSAL OF DR. R.'S GENUINE AND
        REASONABLE SAFETY CONCERNS ........................................................10

IV.     CONCLUSION .............................................................................................15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Doe v. John F. Kennedy Univ.*,
   No. C-13-1137, 2013 WL 4565061 (N.D. Cal., Aug. 27, 2013) ...................... 13

*Does I Thru XXIII v. Advanced Textile, Corp.*,
   214 F.3d 1058 (9th Cir. 2000) ........................................................... 10, 11, 13, 14

*Floyd v. United States*,
   860 F.2d 999 (10th Cir. 1988) ................................................................. 9

*Jessica K. v. Eureka City Sch. Dist.*,
   No. C 13-05854 WHA, 2014 WL 689029 (N.D. Cal. Feb. 21, 2014) .............. 12

*United States v. Stoterau*,
   524 F.3d 988 (9th Cir. 2008) ............................................................... 11

**Statutes**

31 U.S.C. § 3724 ........................................................................................... 9

**Other Authorities**

U. S. Const. amend. IV .................................................................................. 14

# I.

## INTRODUCTION

The Government admits that it took Dr. R.'s property and that she is entitled to its return.  The Government admits that Dr. R. did nothing wrong and that her property is not subject to forfeiture.  The Government also admits that it knows her legal name and box number.

It has now been four months since the Government seized Dr. R.'s property, which included cash and coins.  In the interim, the Government returned some of the seized coins and none of the seized cash.  When Dr. R. appealed directly to the Government to return the rest, it ignored her; forcing her to file this lawsuit seeking: (a) the return of her as-yet-unreturned coins, (b) the return of her as-yet-unreturned cash, and (c) documents related to the search and seizure that will help her prove her claims.

In response, the Government has not returned Dr. R.'s property, or even suggested a timeline on which it will return even the as-yet-unreturned property about which there is no dispute.  Instead, the Government asks this Court to throw Dr. R. out of court based on two specious arguments.  The first argument is actually a two-step exercise in obfuscation.  First, the Government ignores Dr. R.'s request for unreturned cash and the request for documents, and simply pretends they are not part of her claim.  Second, the Government boldly misrepresents Dr. R.'s request for her coins and tells the Court that she seeks damages, even though she repeatedly requests *only* a return of her as-yet-unreturned property.  Because the Government's arguments do not address Dr. R.'s actual positions, they fail entirely.  Indeed, it is hard to understand how they can be made in good faith.

As a second argument, the Government asserts that Dr. R. must be thrown out of court because she is afraid to publicize her complete last name in connection with her ownership of substantial cash and gold.  This is despite the fact that the Government is fully aware of her legal name and indeed has met with her in person

1    and sat in her living room.  According to the Government, even if Dr. R. is subject

2    to a threat of theft or violence by disclosing her name, that's just "too bad."

3          This is not right.  Dr. R. has done nothing wrong.  She wasn't bothering

4    anybody, was minding her own business, and simply chose to keep her retirement

5    savings in assets and in a location that felt safest to her.  She did not seek out any

6    public attention or notoriety.  But the months-long-and-counting deprivation of her

7    property, and Government stonewalling left her with no choice but to file this

8    lawsuit.  Frankly, the Government owes her an apology.  At the very least, she does

9    not deserve to have her case dragged out longer by disingenuous and meritless

10   arguments.  The Government's motion should be denied.[1]

**II.**

11

12   **THE GOVERNMENT'S ARGUMENTS ABOUT LACK OF JURISDICTION**

13   **ARE BASED ON A MISREPRESENTATION OF DR. R.'S CLAIMS**

14   **A.**    **Dr. R.'s claims cover much more than just the unreturned coins,**

15             **including hundreds of thousands of dollars of unreturned cash**

16         All parties agree that Dr. R. kept cash in her box at USPV.  (*See, e.g.*, Am.

17   Compl. (Dkt. 13) at 8:24; Gov. Mot. to Dismiss (Dkt. 18) at 15:14-16 ("Plaintiff . . .

18   stored cash and gold and silver coins at USPV").)  Dr. R. asserts that the cash has

19   not yet been returned (Dkt. 13 at 10:25) and the Government does not contend

20   otherwise.

21         Dr. R. seeks an Order that the Government "[r]eturn to Dr. R. all as-yet-

22   unreturned property seized from Box 8309."  (Am. Compl. (Dkt. 13) at 29:17.)  The

23   Government's failure even to acknowledge the as-yet-unreturned cash means Dr. R.

24   states a claim upon which relief can be granted and the Motion to Dismiss must be

25   denied.

26

27   [1]   To the extent the Court grants any part of the Motion, Dr. R. hereby requests

28   leave to amend.

Moreover, Dr. R. also has requested an order requiring the Government to produce documents and inventory related to the seizure of her property so that she may support her claims regarding her possessions.  (*See id*. at 29:19-30:5, n.17.) This is well within the Court's power under Rule 41 as well as within the Court's equitable power.  (*See id.* at 24:21-29:8.)  This too easily survives any issue the Government may raise regarding the status of the as-yet-unreturned coins.  Because the Government ignores the request for the cash and documents, the Motion to Dismiss must be denied even on that basis alone.

**B.      The Government misrepresents Dr. R.'s position with respect to the as- yet- unreturned coins**

The Government's claim that Dr. R. seeks damages is flatly wrong and completely misrepresents Dr. R.'s pleadings:

- Dr. R.'s Rule 41 Complaint is titled "Complaint (Motion) For Relief Under Fed. R. Crim. Pro. 41; ***Requesting Missing Property***, Inventories, and Records."  (*Id.* at 1 (emphasis added).)

- The Notice of Motion states that Dr. R. "will and hereby does move the Court for an order that (1) the Government ***return all as-yet-unreturned property*** it seized from Box 8309 . . . ."  (*Id.* at 2:-5 (emphasis added).)

- The introductory section of the Memorandum states "Dr. R. seeks an order that the Government (1) ***return all as-yet-unreturned property*** it took from Box 8309 . . . ."  (*Id.* at 8:14-15 (emphasis added).)

- The "Relief Requested" section of the Memorandum states "Dr. R. requests that the Court order the Government to: (a) ***Return to Dr. R. all as-yet- unreturned property*** seized from Box 8309 . . . ."  (*Id.* at 29:15-18 (emphasis added).)

- Nowhere – *nowhere* – in any of Dr. R.'s filings does she mention seeking damages.

The Government makes its argument by completely ignoring all of this and

1   instead focusing on a single phrase – which is not even an assertion of fact – in the

2   Complaint stating that considering the Government's chaotic search "it is no

3   surprise that items were misplaced, lost, or worse."  (*See* Dkt. 18 at 6:25 (citing 1

4   Am. Compl. at 13).)[2]  Playing some kind of "word-gotcha," the Government claims

5   that the use of the word "lost" results in the following domino effect: (a) "lost"

6   means permanently lost, which (b) means that it is impossible to return the coins,

7   which in turn means (c) that Dr. R. is therefore asking for damages, which (d) are

8   unavailable under Rule 41, which (e) means that Dr. R.'s entire case should be

9   dismissed.[3]

10          The foundational problem with the Government's argument is that Dr. R.

11  never asserted the coins were permanently lost and cannot be found even upon

12  diligent search.  On the contrary, her repeated requests for their return make sense

13  only if "lost" means that they are somewhere that can be located.  Indeed, the Court

14  may take judicial notice of the fact that upon a diligent search, lost objects are often

15  found.[4]

16          Significantly, the Government does not contend that the coins are

17  "permanently lost."  In fact, during a meet and confer in preparation for this motion,

18  counsel for the Government emphatically stated that the Government *does not* claim

19  any coins are permanently lost.  (Declaration of Benjamin N. Gluck ¶ 2.)  Nor does

20  the Government contend in its motion that the coins at issue never existed.  Instead,

21  the Government contends *only* that *Dr. R.* supposedly claims they are permanently

22

---

23  [2]    Later in the Complaint Dr. R. alleges that "it is no surprise that items *could* be

24  lost, misplaced, or worse."  (Dkt 13 at 16:11-12.)  Obviously, this cannot be read as

25  an assertion of fact that anything was (permanently) lost.

26  [3]    As noted earlier, this argument fails to account for her claims related to the

27  missing cash and to the documents and inventories.

28  [4]    *Cf. Matthew* 7:7 (King James) ("seek, and ye shall find").

1  lost.  And she, of course, did no such thing.  Indeed, how could she?  All Dr. R.

2  knows is that the Government seized her coins and cash months ago and has not yet

3  returned them all.

4         It is a basic rule of pleading that complaints must be construed in the light

5  most favorable to the plaintiff.  "On a motion to dismiss under Rule 12(b)(6), the

6  court must accept as true all of the factual allegations set out in plaintiff's complaint,

7  draw inferences from those allegations in the light most favorable to plaintiff, and

8  construe the complaint liberally."  Rutter Group, *Fed. Civ. Pro. Before Trial*

9  ¶ 9:213, (citations omitted).  Indeed, even if the Complaint's reference to "lost"

10  were ambiguous – and in the context of the relief requested it is not – "the Court

11  must adopt whichever plausible inference supports a valid claim."  *Id.* at ¶ 9:214

12  (citing *Starr v. Baca*, 652 F.2d 1202, 1216 (9th Cir. 2011).)  This means that Dr. R.

13  suggested that the Government may have temporarily lost track of the coins –

14  probably in the chaos of its search – and she seeks an order requiring the

15  Government to find and return them.

16         In short, the Government misrepresents Dr. R.'s position (she never claimed

17  the coins were permanently lost) and misrepresents the relief she seeks (she seeks

18  return of her property, not damages).  In fact, Dr. R. seeks a return of all her as-yet-

19  unreturned property (cash and coins), and Rule 41 is precisely the proper vehicle for

20  this relief.  Even apart from the Government's failure to address the unreturned

21  cash, the Government's argument regarding the unreturned coins must be rejected.

22  **C.    The Government's asserted administrative remedy is entirely**

23          **inapplicable**

24         The Government claims that Dr. R. has an administrative remedy available to

25  her under the "FBI claims process," which supposedly "divests the Court of

26  jurisdiction to hear this case."  (Mot. Dismiss (Dkt. 18) at 9:8-10:22.)  This

27  argument fails for multiple reasons.

28         First, there is no rule that a claimant must exhaust some "FBI claims process"

---

3736790.3

LINDA R.'S OPPOSITION TO GOVERNMENT'S MOTION TO DISMISS

before filing a Rule 41 motion.  Indeed, the Government cannot cite a single case applying Rule 41 where the Government even argued – much less won the argument – that a Rule 41 claim case should be dismissed for failure to exhaust under the administrative claims process cited here.  This appears to be for good reason: 31 U.S.C. § 3724 does not provide a "remedy at law" because it is entirely discretionary and merely *permits* the FBI to settle certain claims *should it so choose*. For Dr. R., who has repeatedly requested the return of her property only to be stonewalled, this is not a "remedy" at all.[5]

Second, and even more troubling, the Government disingenuously ignores the explicit statutory cap on settlements.  Recall that Dr. R. seeks the return of 40 one-ounce gold coins.  The Complaint alleges that the coins are worth "over $75,000." (Am. Compl. (Dkt. 13) at 6:7-8.[6])  Nowhere in the Government's discussion of the claims process authorized by § 3724 does the Government mention the statutory cap on the process: "(a) The Attorney General may settle, *for not more than $50,000* in any one case, a claim . . . .  (b) A claim may be paid under this section *only if the claimant accepts the amount of the settlement in complete satisfaction* of the claim against the Government."

In other words, the Government completely fails to mention that its suggested "adequate remedy at law" is not "adequate" at all because it explicitly prohibits compensating Dr. R. for the full amount of the as-yet-unreturned coins (let alone the

---

[5]   "Remedy" is defined as "[t]he means of *enforcing* a right."  Remedy, *Black's Law Dictionary* (11th ed. 2019) (emphasis added).  A discretionary program giving Dr. R. no means of enforcement cannot provide an adequate remedy at law.  *See, e.g.*, *Floyd v. United States*, 860 F.2d 999, 1004 (10th Cir. 1988) (because remission or mitigation of forfeiture is entirely discretionary, it does not provide an adequate remedy at law).

[6]   Because the price of gold fluctuates, this number also fluctuates.  As of July 24, 2021, 40 ounces of gold was worth about $72,000.  *See* https://www.monex.com/gold-prices/

1   unreturned cash).  It is difficult to understand how the Government could even make

2   this argument in good faith.  In any event, it should be rejected.

3                                                   **III.**

4   **THE COURT SHOULD REJECT THE GOVERNMENT'S CAVALIER**

5   **DISMISSAL OF DR. R.'S GENUINE AND REASONABLE SAFETY**

6                                      **CONCERNS**

7           The Government concedes that it knows Dr. R.'s legal name.  Indeed, FBI

8   agents met with Dr. R. in her living room.  Nevertheless, the Government insists that

9   Dr. R. should not be heard in this Court unless she also discloses her last name to

10  the public.

11          To proceed without disclosing Dr. R.'s legal name, the Court must consider

12  (a) the claimed need for anonymity, (b) any resulting prejudice to the opposing

13  party, and (c) the public's interest in knowing her specific identity.  *Does I Thru*

14  *XXIII v. Advanced Textile, Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000).  In

15  considering Dr. R.'s need for anonymity, the Court must consider (d) the severity of

16  the threatened harm, (e) the reasonableness of Dr. R.'s fear, and (f) Dr. R.'s

17  vulnerability to the alleged threat.  *Id.*  Finally, when considering any potential

18  prejudice to the opposing party, the Court must determine prejudice at each stage of

19  the proceedings and whether the proceedings can be structured to mitigate that

20  prejudice.  *Id.*  At this stage of the proceeding, each factor weighs in favor of Dr.

21  R.'s request to proceed without publicly disclosing her last name.

22          **Factor (a) - The claimed need for anonymity**: As set out in the Complaint,

23  Dr. R. is elderly and lives alone.  She also keeps her retirement savings in cash and

24  gold and is concerned about instability in the banking system.  (Am. Compl. (Dkt.

25  13) at 8:22-9:6.)  She fears that if her legal name is publicly disclosed, someone who

26  knows her name and circumstances could easily find where she lives and threaten

27  her, or worse, in order to try to take her savings.  This threatened harm, both

28  physical and financial, would be severe – which means that factor (d) above is in her

favor.  Further, this concern is eminently reasonable, and precisely why people hesitate to publicly announce their possession of large quantities of cash and precious metals – which means that factor (e) is also in her favor.  Finally, as an elderly woman living alone, she is particularly vulnerable to a threat like this – which means that factor (f) is also in her favor.[7]  Thus, Dr. R.'s claimed need for anonymity satisfies factor (a) above pursuant to the test set out in *Advanced Textile*.

In a disturbing portion of the Government's Motion, it asserts that even if disclosure of Dr. R.'s name subjects her to a threat of violence, that's apparently just too bad for her.  (Mot. to Dismiss (Dkt. 18) at 14:3-9.)  In support, the Government points to a Ninth Circuit case where the court rejected a request by a convicted sex offender to use a pseudonym because he claimed he was subject to abuse in prison.  (*Id.* (citing *United States v. Stoterau*, 524 F.3d 988, 1013 (9th Cir. 2008).)  But the comparison to *Stoterau* fails entirely.  The holding in *Stoterau* was based on three factors that bear no resemblance to Dr. R's circumstances: first, the presence of "prison officials who have the primary responsibility" to ensure the safety of all inmates; second, the public interest in knowing the identity of this sex offender; and third the defendant's name was already publicly disclosed on the docket.  524 F.3d at 1013.  Together, this meant that the balance in that case did not favor anonymity.  *Stoterau* does not stand for the notion that Dr. R.'s concerns about violence and theft are invalid or that threats of violence do not justify anonymity.  The balance here is in favor of her request.

**Factor (b) - Any resulting prejudice to the opposing party**: The Government knows Dr. R.'s legal name.  (Mot. to Dismiss (Dkt. 18) at 11:28-12:1

---

[7]   In a particularly odd assertion, the Government says that Dr. R. is not vulnerable because she is "an individual living in the United States who has the means to hire a large law firm and who has stored cash and gold and silver coins at USPV in Beverly Hills."  (Mot. to Dismiss (Dkt. 18) at 15:14-16.)  The Government does not explain how Dr. R.'s ability to hire counsel protects her from a home invasion.

("Dr. Linda R. has provided her true identity to the FBI.").)  But it asserts two reasons why it is supposedly prejudiced by her desire to keep her last name private. Both are entirely lacking in merit.

First, the Government claims that permitting Dr. R. to proceed without disclosing her name is "logically impractical." (*Id.* at 12:2-3.)  Specifically, the Government claims that allowing Dr. R. to proceed without publicly disclosed her full name "will require federal law enforcement officials and witnesses to awkwardly avoid using plaintiff's true name" and that it is "impractical for the government to use a fictitious name throughout this case." (*Id.* at 12:13-18.)  To be plain, that response is nonsensical.  If the Government's position were law and "awkwardness" were enough to satisfy the prejudice prong, then *no* plaintiff would ever be permitted to proceed anonymously.  Of course, this is not the law and "federal law enforcement officials and witnesses" are surely competent enough to meet the challenge of not publicly disclosing Dr. R.'s last name.  Indeed, it is hard to imagine any group that is more experienced with using fictitious names than federal law enforcement officials and witnesses.[8]  Dr. R. did not desire to be dragged into this litigation; it was the Government that reached out and took her property and has yet to return much of it.  The Government's purported "awkwardness" does not outweigh Dr. R.'s genuine safety concerns and it should certainly not be enough to throw her out of Court.[9]

---

[8]  *See, e.g.,* https://www.justice.gov/sites/default/files/ag/legacy/2013/09/24/undercover-fbi-operations.pdf (defining "Undercover Activities" as "any investigative activity involving the use of an assumed name or cover identity").

[9]  The cases cited by the Government in this section of its brief are entirely inapposite to the facts here.  In one of those cases, the plaintiff students sought to keep the plaintiffs' names hidden from their witness classmates, even though the classmates would be deposed about their interactions with the plaintiffs whose names they would not know.  *See Jessica K. v. Eureka City Sch. Dist.*, No. C 13-

Second, the Government claims that allowing Dr. R. to keep her last name off the public docket would be prejudicial because "the floodgates will open, and other anonymous individuals will file identical lawsuits seeking the 'return' of allegedly missing gold." (Mot. to Dismiss (Dkt. 18) at 12:19-27.) Again, this makes no sense. First, the Government admits that it knows Dr. R.'s full legal name and it knows which box was hers. Why would allowing her to keep her last name off the public docket somehow influence others to (violate the law) and make false claims? Second, the Government's worry about opening the floodgates of false claims should be easily alleviated by the inventories they told Magistrate Judge Kim they would make to protect the Government from false claims as part of the basis for securing their warrants at USPV. (Am. Compl. (Dkt. 13) at 16:13-17:12 (including citations and exhibits).) Indeed, creation of those inventories was supposedly the entire purpose of the Government's inspection of the contents of the boxes in the first place.

In short, the Government does not point to any real prejudice at all – it already knows Dr. R.'s name and it can surely avoid using it publicly (just like it successfully avoided using it in its Motion to Dismiss). Discovery in this case will be generally focused on what the Government did rather than Dr. R. And the Court can always consider any potential prejudice at every stage of the proceedings and impose protective orders, redactions, or other protections if and when the need arises. For now, however, the Government's claimed prejudice – factor (b) above – is easily outweighed by Dr. R.'s safety concerns.

**Factor (c) - The public's interest**: The public has a general interest in knowing the true name of every litigant in every case. *See Advanced Textile*, 214

05854 WHA, 2014 WL 689029 (N.D. Cal. Feb. 21, 2014). In the other case, the court found that the plaintiff did not have a real need for anonymity because there is no stigma associated with ADHD. *Doe v. John F. Kennedy Univ.*, No. C-13-1137, 2013 WL 4565061 (N.D. Cal., Aug. 27, 2013).

F.3d at 1067.  Sometimes, however, that interest is outweighed by other considerations.  *Id.*  As discussed at length in *Advanced Textile*, the public has many interests in litigation, including an interest in seeing cases of public importance decided on the merits.  *Id.* 214 at 1073.  Indeed, as the Court concluded in that case, the public had very little interest in knowing the identity of the particular plaintiff, which was easily outweighed by the public's interest in the "widespread implications" of the case.  *Id.* at 1072-73.

   The Government asserts that the searches at U.S. Private Vaults have received public attention.  This is true.[10]  The public interest is in allowing this litigation to go forward to establish a precedent vindicating the Fourth Amendment rights of U.S. Private Vaults customers such as Dr. R. who have not yet received (all of) the

_____

[10] Specifically, this case has been covered by national news media, including the Los Angeles Times, the Wall Street Journal, Reason Magazine, and CNN, to name just a few examples.  *See, e.g.*, *Guilty Until Proven Innocent*, Wall Street Journal, July 7, 2021, available at  https://www.wsj.com/articles/guilty-until-proven-innocent-11625697428; *Innocent Citizens Sue The FBI Over Illegal Security Deposit Box Raid*, Forbes, July 2, 2021, available at https://www.forbes.com/sites/instituteforjustice/2021/07/02/innocent-citizens-sue-the-fbi-over-illegal-security-deposit-box-raid/?sh=337fe3d72b6a; *Judge Orders FBI To Halt Forfeiture of Cash, Jewelry From Safe Deposit Boxes*, Reason, June 24, 2021, available at https://reason.com/2021/06/24/judge-orders-fbi-to-halt-forfeiture-of-cash-jewelry-from-safe-deposit-boxes/; *Judge Blocks FBI From Keeping Cash, Gold And Silver Seized In Beverly Hills Raid*, Los Angeles Times, June 23, 2021, available at https://www.latimes.com/california/story/2021-06-23/fbi-beverly-hills-raid-court-blocks-confiscation; *FBI Holding On To Valuables Seized In Safe Deposit Box Raid*, CNN National News Broadcast, June 12, 2021, available at https://www.cnn.com/videos/tv/2021/06/12/fbi-overreach-millions-seized-in-raid-on-safe-deposit-boxes.cnn; *After FBI Seizure Of Safe Deposit Boxes In Beverly Hills, Legal Challenges Mount*, Los Angeles Times, April 8, 2021, available at https://www.latimes.com/california/story/2021-04-08/seizure-beverly-hills-safe-deposit-boxes-lawsuits.  There are many, many more examples of local, national, and even international media coverage, which can be found by searching for "U.S. Private Vaults" at www.news.google.com.

1   property the Government seized from them.  Conversely, the public interest in

2   knowing Dr. R.'s full legal name is much lower.  This means that the public interest

3   in knowing Dr. R.'s complete name, factor (c) above, is certainly not enough to

4   outweigh Dr. R.'s need for anonymity and cause her case to be thrown out of court.

5                                               **IV.**

6                                        **CONCLUSION**

7              Dr. R. did nothing to seek the limelight here.  But the Government broke open

8   her safety deposit box and seized her retirement savings, returned a fraction of what

9   they took, and then ignored her requests for the return of the rest.  As set out in her

10  complaint, she is still missing cash and coins, and she seeks their return by this

11  lawsuit.

12             As an elderly retiree who has done nothing wrong, one would have hoped that

13  the Government would have treated Dr. R. better than it has.  Even an explanation of

14  when she would receive her as-yet-unreturned cash would have been nice, and gone

15  a long way to quiet her fears over losing her retirement savings.  Instead, the

16  Government has stonewalled her and now is trying to throw her out of court based

17  on (a) a gross misrepresentation and misreading of her claims, and (b) an argument

18  that supposed "awkwardness" federal agents may experience in calling her Dr. R.

19  should somehow outweigh her genuine fear of theft and violence.  She does not

20  deserve to be treated this way.

21             The Government's Motion to Dismiss is not well taken.  It ignores Dr. R.'s

22  request for the return of cash, it falsely claims that she seeks damages, it suggests a

23

24

25

26

27

28

1   supposed remedy at law that is no remedy at all, and it improperly minimizes Dr.

2   R.'s serious safety concerns.  It should be denied.

3   DATED:  July 26, 2021                     Benjamin N. Gluck

4                                             Nicole R. Van Dyk
                                              Naomi S. Solomon

5                                             Bird, Marella, Boxer, Wolpert, Nessim,
                                              Drooks, Lincenberg & Rhow, P.C.

6

7

8                                  By:        _____/s/ Benjamin N. Gluck_____

9                                                  Benjamin N. Gluck
                                              Attorneys for Dr. Linda R

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28